*In re* GEORGE ELLIS, *Petitioner.*

No. 15,519.   (91 Pac. 81.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of an Act—Intoxicating Liquors —Attorney's Fees as Costs.* The title to chapter 165 of the Laws of 1887 is broad enough to include the provision of section 5 thereof (Gen. Stat. 1901, § 2476) which authorizes the taxing of attorney's fees as costs in prosecutions brought by the attorney-general or his assistant under the prohibitory liquor law.

2. HABEAS CORPUS—*Unfit Jail.* The fact that a county jail is in bad condition and is an unfit place in which to keep prisoners

*In re* Ellis.

confined will not authorize this court to order a prisoner confined therein released on *habeas corpus.*

3. ——— *Failure to Pay Fine and Costs—Authority of Commissioners—Cruel and Unusual Punishment.* The board of county commissioners alone has authority to order the release of a prisoner committed to the county jail for failure to pay a fine and costs. The refusal of the board to discharge a convicted person who has been found to its satisfaction to be unable to pay the fine or costs will not make his imprisonment cruel or unusual punishment, nor furnish ground for his release by *habeas corpus.*

Original proceeding in *habeas corpus.* Opinion filed July 5, 1907. Writ denied.

### STATEMENT.

THERE is an agreed statement of facts, from which it appears that George Ellis, the petitioner, on the 27th day of September, 1905, was convicted in the district court of Wilson county of violating the prohibitory liquor law, upon an information containing fifty-two counts, and was sentenced by the court on each count to imprisonment in the county jail of Wilson county for the term of thirty days and to pay a fine of $100, and committed to the county jail until the fine and costs were paid. The term of his imprisonment amounted to fifty-two months, the fine to $5200, and there was taxed up as costs in the case the sum of $1300, being $25 on each count as attorney's fees for E. D. Mikesell, who prosecuted the action as assistant attorney-general.

The petitioner was committed to the jail on the 3d day of October, 1905. His sentence was commuted by Governor Edward W. Hoch to expire on the 20th day of June, 1906, and he has since been confined in the jail because of the non-payment of the costs. At the regular meeting of the county commissioners of Wilson county following the commutation of his sentence the petitioner made application to be released for the reason that he was unable to pay the costs. It is a part

24—76 KAN.

of the agreed statement of facts that the county commissioners were and are satisfied of his inability to pay the costs and only refuse to release him for the reason that Wilson county would become liable to the assistant attorney-general for the sum of $1300. The county board has paid the other costs and declares its purpose to keep the petitioner in the county jail for his natural life rather than the county should pay this sum to Mr. Mikesell. The petitioner is a poor man and has no means of paying the costs nor procuring them from others. He is in poor health, and his condition is such that he requires medical attention continuously.

In addition to the agreed facts, it appears from the evidence that for the past year the board of county commissioners and Mr. Mikesell have been sparring over an attempt to have these fees reduced; that the board made him an offer of $750 if he would release further claims against the county, which offer he refused.

Submitted with the evidence is a copy of a written report made to the board of county commissioners, dated January 12, 1907, signed by the Honorable Leander Stillwell, judge of the district court, B. F. Carter, county attorney, and J. W. Timmons, sheriff, in regard to the condition of the Wilson county jail, from which it appears that the jail is entirely inadequate to accommodate the number of prisoners, that it is poorly ventilated, and there is no space in which the prisoners can take exercise. The final recommendation to the board, signed by these gentlemen, is as follows:

"And that finally the jail of Wilson county be made a fit place for human beings, though criminals, to be confined in, instead of a dark, filthy, disease-breeding dungeon for its inmates, and a disgrace upon a prosperous and enlightened community."

*Osborn & Osborn,* for petitioner.

*Fred. S. Jackson,* attorney-general, *E. D. Mikesell,* assistant attorney-general for Wilson county, and *Frank Woodard,* county attorney, for respondent.

The opinion of the court was delivered by

PORTER, J.: Briefs have been filed and oral arguments made on behalf of the petitioner and by the attorney-general and Mr. Mikesell representing the state, and also by the county attorney of Wilson county on behalf of the board of county commissioners. The situation presented is anomalous, for the court has practically been importuned by those representing both sides of the controversy to find some way to order the petitioner's discharge. The board of county commissioners apparently desires to be relieved of the responsibility of the situation and to obtain a decision which will in some manner have the effect to release the county from liability to Mr. Mikesell.

It is contended by the petitioner that section 2476 of the General Statutes of 1901 is unconstitutional. This act authorizes the taxing of $25 as attorney's fees for each count upon which a conviction is had in this class of cases, and declares that the county shall be liable therefor to the attorney-general or his assistant where the same is not paid by the convicted person within one month after his release from jail. In this contention he is heartily joined by the attorney for the board of county commissioners. The petitioner is held for the payment of these costs, and manifestly can in this proceeding raise the question of whether they can be lawfully taxed against him; but whether the county can be compelled to pay them to Mr. Mikesell after the petitioner's release, if he should be released, is not involved here and is no concern of the petitioner. The board of county commissioners is not a party to this proceeding, nor is Mr. Mikesell.

The objection to the validity of the section is that

the title of the act is too narrow to include the taxing of such costs. The section is an amendment to the prohibitory liquor law of 1885, and is section 5 of chapter 165 of the Laws of 1887 (Gen. Stat. 1901, § 2476). The title to this act was assailed upon practically the same grounds in *The State v. Brooks,* 74 Kan. 175, 85 Pac. 1013, and upheld. In that case it was said: "A provision intended to insure the prosecution of offenses against an act is as plainly adapted to the enforcement of its purpose as is one prescribing a penalty." (Page 177.) We must therefore hold against the petitioner's claim that these costs are not lawfully taxed against him.

The principal contention of the petitioner is that the refusal of the board to order his release unless he shall pay the costs, when his inability ever to pay has been established and conceded by the board, is in violation of section 9 of the bill of rights of the constitution, which provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." (Gen. Stat. 1901, § 91.)

It was decided in *In re Boyd, Petitioner,* 34 Kan. 570, 9 Pac. 240, that imprisonment for the non-payment of costs is no part of the punishment, and in the same case it was held that imprisonment under such circumstances is not imprisonment for debt. It is urged that the present case differs from that because the board has found that the petitioner is unable to pay the costs and has announced the intention of continuing the refusal to release him although it will have the effect to keep him confined for the remainder of his life, and the case of *Ex parte Tuicher,* 69 Iowa, 393, 28 N. W. 655, is relied upon. In that case the supreme court of Iowa said:

"It is true that the imprisonment is but a mode of enforcing the payment of the fine and costs; but if the convicted person is unable to pay, then the imprisonment becomes punishment, and possibly within the prohibition of section 17 of article 1 of the constitution,

which provides that cruel and unusual punishment shall not be inflicted." (Page 396.)

Reliance is also placed upon some expressions in the opinion in the case of *The State v. Looker,* 54 Kan. 227, 38 Pac. 288, where the same question was raised, in respect, however, to the validity of the judgment and sentence. It was argued that the sentence was indefinite; that if a person convicted is unable to pay the fine and costs he might be imprisoned during his natural life, and if there is no authority for his discharge there is no limitation of the duration of his imprisonment. It was insisted that if an indefinite sentence may not be imposed nor excessive nor unusual punishment inflicted, a law which has the effect to impose such penalty should be held to be void. The court in the opinion declared that chapter 199 of the Laws of 1889 was void, because, in attempting to amend chapter 117 of the Laws of 1871, providing for the discharge of prisoners unable to pay the costs, the legislature in the title to the act provided for amending chapter 147 in place of 117. In the opinion it was said by Mr. Justice Johnston: "A plausible argument. to sustain this view was made in behalf of the defendant, and there would be great force in his contention if chapter 199 of the Laws of 1889 could be treated as a valid law." (Page 229.) As the case was decided expressly upon the proposition that the law was void, the expressions which are relied upon are *obiter.*

In *The State v. White,* 44 Kan. 514, 25 Pac. 33, the section of the bill of rights here involved was under consideration, and it was said by Mr. Justice Valentine that the provision "probably, however, relates to the kind of punishment to be inflicted, and not to its duration." (Page 520.)

But it is unnecessary to decide whether imprisonment for the non-payment of costs, where the prisoner is unable to pay them, might not under some circumstances amount to cruel and unusual punishment, for,

notwithstanding the threats of the board—if threats they can be termed—to keep the petitioner confined for the remainder of his life, we would have no right to assume that the present or some future board will not deal justly in the matter and order him released when satisfied of his inability to pay the costs. Some criticism of the present board has been indulged in by counsel for the state, and the members have been charged with a disregard of the claims of humanity and justice in their persistence in refusing to order the petitioner released. The matter has been before the board a number of times, and numerous and various resolutions have been adopted to bring about an adjustment of the costs so that the same will not fall upon the county; but the members have placed themselves on record several times as recognizing that justice and humanity require his release. The difficulty appears to be that the board has never been able to see over and beyond the $1300. Doubtless it would not hesitate to order the expenditure of as large an amount to build a bridge over a creek and save a few taxpayers some slight inconvenience in travel, but the expenditure of $1300 of the county's money to uphold and enforce the criminal laws of the county seems to it to be money thrown away. In this era of law enforcement most people would regard the sum as insignificant when added to the taxes of a large and populous county and compared to the advantage which must accrue to the community in vindicating law and order and suppressing lawlessness.

The certificate of the honorable judge who has so long presided over the district court is a severe condemnation of the jail and its conditions and surroundings. Jails are never desirable places in which to remain, but the dictates of humanity demand that some consideration should be given to the comfort, and especially to the health, of those compelled to occupy them. As communities become more enlightened and prosperous the tendency is in favor of bettering the

condition of all classes of unfortunate persons who are committed to the care of the public. It must be obvious, however, that we cannot order the petitioner released on account of the condition of the jail. To do so would require us on similar applications to order the release of all prisoners confined there.

The authority of the board to discharge the petitioner is conferred by section 5698 of the General Statutes of 1901, which reads as follows:

"Any person imprisoned for failure to pay any fine or costs may be discharged from imprisonment by the board of commissioners of the county where conviction took place, on satisfactory proof to them that said person is unable to pay the same."

The act gives the board power in its discretion to discharge him, but it is not mandatory. An action of mandamus would not lie to compel the board to act.

Having decided that the costs taxed against the petitioner are authorized by law, that under the circumstances it cannot be said that his imprisonment for failure to pay them amounts to a violation of the bill of rights and is cruel or unusual punishment, and that the condition of the county jail is not a ground upon which we may order his release, our responsibility ends. The board of county commissioners alone has authority to discharge the petitioner. The law and the official oaths of the members of the board impose duties and responsibilities upon them which can neither be avoided at will nor shared with others. The writ is denied.