Faribault v. Sater et al.

ALEXANDER FARIBAULT

vs.

ISAAC N. SATER et al.

In an action for false and fraudulent representations by the vendor, in the sale of mill property, as to the capacity of the mill, declarations of the miller, not a party to the sale, as to the reasons the mill could not grind as much as the vendor represented, made in the absence of the latter, are inadmissible.

The representations of the vendor, in such case, to render him liable, must have been made pending the negotiations for the sale, and evidence of representations concerning the property, made by the vendor after the completion of the sale, is not admissible.

One vendee cannot state the effect of representations made by the vendor upon the mind of his co-vendee.

Where a deed of conveyance is executed, the purchaser is remitted for his relief as to defects in the property purchased to the covenants in his deed, unless there has been fraud in the transaction on the part of the vendor.

The purchaser of a flouring mill, unacquainted with milling, may rely upon the positive and unqualified representations of the vendor, that the mill, as it existed at the time of the sale, was capable of grinding a specific number of bushels of wheat per hour, and if the representations are false and fraudulent, the vendor is liable in an action for deceit.

Whether the formation of a sluiceway connected with a mill is firmly laid upon the sand rock, which is from four to five feet below the bed of the river at that point, is a fact which may be positively determined, and if positive and unqualified representations that such is the fact are made by a vendor to a purchaser, the vendee may rely upon such representations, and if the representations are false and fraudulent, the vendor is liable in an action for deceit.

This action was commenced in the District Court for Rice county, by Alexander Faribault against Isaac N. Sater and James H. Bangs. The complaint sets out four distinct causes of action : the first, for the principal and interest alleged to be due upon a promissory note, executed on the 22d day of August, 1865, by defendants to one Henry Melhorn, and by said Melhorn indorsed to the plaintiff; the other three for the annual interest alleged to be due the plaintiff on three several promissory notes, executed by the defendants to the plaintiff on the 27th day of July, 1865. The defendants in their answer do not deny the making of the notes, but allege that the plaintiff and said Melhorn were, prior to the 27th day of July, 1865, the owners of certain real estate in said county, on which a mill-dam, grist mill, &c., were situated, constituting its principal value, the plaintiff owning an undivided two-thirds, and the said Melhorn an undivided one-third, the title to the whole being in the plaintiff; that defendants entered into negotiations with the plaintiff to purchase his interest in said real estate ; that the plaintiff, to induce the defendants to purchase the same, represented to them that said mill was capable of grinding, with the two runs of stones then in use, from 15 to 20 bushels of wheat per hour, and that a certain sluice-way forming a portion of said mill-dam was securely built, and the foundation firmly laid on the sand rock below the bed of the river ; that the defendants relying upon such representations, and believing them to be true, purchased plaintiff's said interest, and received a conveyance therefor on said 27th day of July, 1865 ; that the three last described promissory notes, in the plaintiff's complaint, were executed to secure a portion of the purchase money ; that relying upon such representations, and not yet having discovered that they were false, the defendants on the 21st day of August, 1865, purchased of said Melhorn his interest in said premises, and

received from the plaintiff a conveyance therefor; that the promissory note first mentioned in the complaint was executed to secure a portion of the purchase money of this purchase; that such representations were false and fraudulent, and were known to be so by the plaintiff at the time they were made, and were intended by the plaintiff to mislead, deceive and defraud the defendants.

The answer also contained allegations respecting the actual capacity of the mill, and manner in which the sluice-way was built, and the damages resulting to the defendants from the mill not having the capacity, and the sluice-way not being built, as represented, and demanded a judgment in defendants' favor, for the balance of such damages over and above the amount claimed in the complaint. The reply put in issue the new matter in the answer, except as to the consideration for which the notes were given.

On the trial there was conflicting testimony as to the representations made by plaintiff at the purchase; as to the truth of the representations; as to whether the sluice-way or any part of it was placed upon the sand rock, and as to the capacity of the mill at the time of the purchase, and as to the damages resulting from the misrepresentations. The defendants testified that the mill would grind but about eight bushels per hour after they purchased of Faribault; but they were of opinion it was owing to back water, until they made a survey after they had bought of Melhorn, when they found there was no back water, but that it was owing to the incapacity of the mill. The counsel for the defendants, for the purpose of showing that the defendants were informed by Henry Melhorn, (the miller who ran the mill from the time of the purchase from Faribault up to the purchase of Melhorn), that the mill would grind but eight bushels per hour, on account of back water, put the following question to the defendant

Bangs while he was on the stand as a witness: " State what Mr. Melhorn told you at the time was the reason that the mill would not grind as much as Faribault represented, between the purchase of Faribault's interest and Melhorn's interest ? " This question was objected to by plaintiff's counsel as calling for hearsay evidence; the Court sustained the objection, and defendants excepted. J. J. Willis, a witness produced by defendants, was asked by them the following question : ." What did the plaintiff say, if anything, at the time you saw him at the mill in March, 1866, after the purchase, about the sluice-way or any part of it standing on a rock ? " The plaintiff by his counsel objected to the question, upon the ground that it called for statements made after the sale. The Court sustained the objection, and the defendants by their counsel excepted. The Court also sustained the same objection to similar questions put to the witness Bangs. The same witness, Bangs, after stating the representations made by the plaintiff substantially as stated in the answer, was asked by defendants' counsel the following questions : " What effect had these representations on your minds with regard to the purchase of the mill ? What induced the defendants to purchase .Mr. Faribault's interest in the mill ? State whether or not in the purchase of the mill, or any part of it, you relied upon the representations as true ? " These questions were separately objected to by plaintiff's counsel as incompetent. The Court sustained the objections, and defendants by their counsel excepted. ·

It was proved and undisputed that at the time of the purchase the defendants had no knowledge of milling or dam building, and that the sand rock over which the sluice-way was built was from four to five feet below the bed of the river and ground at that point. It also appeared that the plaintiff was in possession at the time of the sale ; that the dam was

Faribault v. Sater et al.

built for him, but that he had no practical knowledge of milling, mills or mill dams.

At the close of the testimony the counsel for the defendant requested the Court to charge the jury: (1) "That if they find the representations charged in the answer, as to the capacity of the mill, and the character of the dam, or any of them, to have been made by the plaintiff pending the negotiations for the purchase of the mill, to induce the plaintiff to purchase the same, that said representations or any of them were relied on by the defendants as true, and formed any part of the inducement to the purchase, and that said representations, or any of them, were false in fact, that in that* case the plaintiff is responsible for the truth of them, whether he did or did not know them to be false, and is liable for the resulting damage. (2) That in case the jury find for the defendants upon the issues in the pleadings respecting the capacity of the mill, and the character of the dam, or any of them, in estimating the damage to the defendants, the jury may consider in respect to the capacity of the mill, the necessary expense incurred by the defendants in increasing the capacity of the same to an equality with the representations of the plaintiff, and, in respect to the character of the dam, the necessary expense incurred by the defendants in rebuilding said dam after the same had been washed away by the action of the river; that the defendants were entitled to rely on the representations of the plaintiff, as to the character of the dam and mill, and that they were not obliged to make further research as to the same; that the capacity of the mill and the character of the dam were not such patent defects as the defendants were bound to take notice of." The Court refused so to charge, and the defendants excepted. At the request of the plaintiff, the court charged the jury, (1), " That the defendants were bound to exercise ordinary prudence and discretion,

and that if the means of knowledge were accessible to the defendants, they were bound to resort to them, and cannot claim damage of the plaintiff because they chose to rely upon his bare statement, instead of availing themselves of the means of information within their reach. (2) That the plaintiff would, in no event, be liable for anything more than his two-third interest, and not for any representations as to the interest bought of Melhorn."

To these instructions the defendants, by their counsel, excepted.

The jury returned a verdict for the plaintiff, for the full amount of his claim. Judgment was entered. The defendants duly filed their bill of exceptions, and appeal from the judgment to this Court.

PERKINS & MOTT, and BATCHELDER & BUCKHAM for Appellants.

COLE & CASE for Respondent.

*By the Court*—McMILLAN, J.—The bill of exceptions in this case states that there was conflicting testimony as to the representations made by plaintiff at the purchase; as to the truth of the representations; as to whether the sluice-way or any part of it was placed upon the sand rock, and as to the capacity of the mill at the time of the purchase, and as to the damages resulting from the misrepresentations. The defendants testify that the mill would grind but about eight bushels per hour after they had purchased of Faribault, but they were of opinion that it was owing to back water, until they made a survey after they bought of Melhorn, when they found there was no back water, but that it was owing to the incapacity of the mill. The counsel for the defendants, for the purpose of showing that the defendants were informed by " Henry Mel-

Faribault v. Sater et al.

horn, (the miller who ran the mill from the time of the purchase from Faribault up to the purchase of Melhorn), that the mill would grind but eight bushels per hour, on account of back water, asked the witness Bangs the following question: State what Mr. Melhorn told you at the time was the reason the mill would not grind as much as Faribault represented between the purchase of Faribault's interest and Melhorn's interest ? "

We are unable to see the relevancy of this question. If it was intended to disprove, by Melhorn's statements to this witness, any representations of Faribault, by showing the incapacity of the mill, it was clearly incompetent. If it was intended to show that Melhorn made misrepresentations to the defendants at the time of the purchase of *his* interest, it is irrelevant, because the sale of Faribault's interest was made a month before, and had no connection with Melhorn's sale; nor is there any evidence whatever to show that Faribault had any notice whatever before the transfer of the Melhorn note to him, that Melhorn had made any such representations at the sale of his interest. Again, it does not appear at what time the statement sought to be proved was made by Melhorn to the witness. If the question does not expressly refer to a time subsequent to the purchase of Melhorn's interest, it certainly is not limited to a time anterior to that event. If it was subsequent to such purchase, it is clearly irrelevant for any purpose. In fact, without something more than appears in the paper-book, we think the statement sought to be elicited from the witness by the question, was nothing more than the declaration of a mere stranger, and was objectionable as hearsay evidence.

The defendants asked the witness Willis the following question: " What did the plaintiff say, if anything, at the time you saw him at the mill in March, 1866, after the purchase,

about the sluice-way, or any part of it, standing on a rock ? "
Questions of a similar character were put to the witness Bangs.

There is nothing in the bill of exceptions to show that this
would be competent as rebutting evidence. The question
does not purport to call for proof of admissions by the plain-
tiff of statements made by him at the time of the purchase,
but the offer is to prove affirmative statements about the
sluice-way made after the purchase. If the defendants relied
upon representations of the plaintiff concerning this mill
property, they must have been made at or before the time of
the purchase. Evidence that the plaintiff, after the comple-
tion of the sale, made statements or representations concern-
ing the property, does not tend to prove that he made such
statements at, the time of the sale. The evidence was prop-
erly excluded.

The witness Bangs, after stating the representations made
by the plaintiff substantially as stated in the answer, was
asked by defendants' counsel: What effect had these repre-
sentations on your minds with regard to the purchase of the
mill ? What induced the defendants to purchase Mr. Fari-
bault's interest in the mill ? State whether or not in the pur-
chase of the mill or any part of it you relied on the represen-
tations as true ? The questions were separately and respec-
tively objected to by the plaintiff as incompetent, and the
objections were sustained. Whether testimony of the charac-
ter sought to be elicited by these interrogatories would be
competent or admissible, we need not at this time determine,
since there are other objections which render the questions
improper. The witness is not asked to state the effect of the
representations upon his own mind, but upon the mind of his
co-defendant also. To allow this, would seem to be going a
step beyond the most advanced position sustained, thus far,
by judicial authority. The last question is liable to the fur-

ther objection that it embraces both the purchase of Fari-
bault's interest and Melhorn's also, the transactions being
separate and distinct from each other. Although upon the
sale of Melhorn's interest in the premises Faribault conveyed
the legal title which it appears was in him, it is not claimed
that he made any representations at the sale of Melhorn's in-
terest, or that he had any notice or knowledge of any made
by Melhorn prior to the transfer to him of the Melhorn note,
or at any other time.

The counsel for the defendants requested the Court to give
in charge to the jury the following propositions :

"1. That if they find the representations charged in the an-
swer as to the capacity of the mill and the character of the
dam or any of them to have been made by the plaintiff pend-
ing the negotiations for the purchase of the mill, to induce
the defendants to purchase the same ; that said representa-
tions or any of them were relied on by the defendants as true
and formed any part of the inducement to the purchase, and
that said representations or any of them were false in fact, that
in that case the plaintiff is responsible for the truth of them,
whether he did or did not know them to be false, and is liable
for the resulting damage."

The Court refused so to charge, and the defendants excepted.
This proposition in effect, embraces the position that the plain-
tiff is responsible in this action for the representations made by
him concerning the property, if such representations or any of
them were not, in fact, true.    Whatever grounds the plain-
tiff may have had to believe the truth of the representa-
tions, however free from fault he may have been in making
them, and although made in good faith, and without any in-
tent whatever to deceive or injure the defendants.

It may be difficult, under some circumstances, to determine
whether certain representations are or are not fraudulent, but

"a mere innocent misrepresentation by mistake can never be made the ground of a personal action for fraud." *Rawle on Cov. Tit.*, 621, *and note* 1; *Brown's Leg. Max.*, 359-60; *Miller vs. Howell*, 1 *Scam.*, 499; *Turrell vs. Gatervord,* 2 *Scam.*, 22; and in this case fraud is an essential ingredient. The weight of authority is where a deed of conveyance is executed, the purchaser is remitted for his relief, as to defects in the property purchased, to the covenants in his deed, unless there has been fraud in the transaction on the part of the vendor. 2 *Kent's Com.*, 471; *Rawle on Cov. for Tit.*, 613, 614 *and n.* 1 *on page* 614, *and authorities cited. Gouverneur vs. Elmendorf*, 5 *John. Ch.*, 79; 1 *Smith's L. Cas.*, 284; *Stone vs. Denny*, 4 *Met.*, 155, *and authorities cited. Eames et al. vs. Morgan et al.*, 32 *Ills.*, 260.

The second proposition submitted by the defendants was also refused. It is as follows:

"2. That in case the jury find for the defendants *upon the issues in the pleadings* respecting the capacity of the mill and the character of the dam, or any of them, in estimating the damage of the defendants, the jury may consider in respect to the capacity of the mill, the necessary expense incurred by the defendants in increasing the capacity of the same to an equality with the representations of the plaintiff, and in respect to the character of the dam, the necessary expense incurred by the defendants in rebuilding said dam after the same had been washed away by the action of the river. That the defendants were entitled to rely on the representations of the plaintiff as to the character of the dam and mill, and that they were not obliged to make further research as to the same. That the capacity of the mill and the character of the dam were not such patent defects as the defendants were bound to take notice of."

The exception of the defendants to the ruling of the Court denying that portion of the request relative to the measure of damages, was not pressed by the defeudant's counsel, nor argued by either party ; we therefore pass it without further remark.

The remaining portions of this request may be considered together, as they involve practically the same question.   The propositions, as we understand, from the case, were submitted as the law to be applied by the jury if it should be found that the representations touching the capacity of the mill and the character of the dam, or either of them, were made *fraudulently* by the plaintiff.   The answer charges that the plaintiff represented to the defendants " that the said mill was capable with the two runs of stone then employed therein of grinding from 18 to 20 bushels of wheat per hour, and also represented that a certain sluice-way which forms a portion of said mill-dam was securely built, and the foundation thereof firmly laid on the sand rock below the bed of the river on which said mill is erected."   It was proved and undisputed that at the time of the purchase the defendants had no knowledge of milling or dam building, and that the sand rock over which the sluice-way was built was from four to five feet below the bed of the river and ground at that point.   The plaintiff was the owner and in possession of his interest in the mill, which was two-thirds thereof; the dam was built for the plaintiff, but he had no practical knowledge of milling, mills or mill dams.   The grinding capacity of the mill with the two runs of stone therein was a fact which could be positively determined, but depending upon the character and condition of the stream upon which it is located, the power and efficiency of the machinery, and various other matters ; it could not be ascertained by a stranger without a knowledge of all these things or by actual experiment, which the vendee upon the

representations of the vendor might properly forbear to make.

The foundation of the sluice-way was a matter of fact also, which could be definitely ascertained. But as it was below the bed of the river and surface of the ground, whether it was upon the sand rock could not be ascertained without much trouble and inconvenience. Neither the capacity of the mill nor the foundation of the dam, therefore, were matters which were open to the observation of a purchaser. They were facts materially affecting the value of the property; the plaintiff was the owner and in possession of the premises sold; the defendants, therefore, might well rely upon positive and unqualified representations by him of facts concerning the mill and sluice-way, and if the representations were false and fraudulent the plaintiff is liable. "The rule," says Chief Justice Shaw, "is cautiously stated by Lord Ellenborough: 'A seller is unquestionably liable to an action of deceit, if he fraudulently misrepresent the quality of the thing sold to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing, or if he do so in such a manner as to induce the buyer to forbear making the inquiries, which for his own security and advantage, he would otherwise have made. *Vernon vs. Keys,* 12 *East.*, 637.'" *Hazard vs. Irwin,* 18 *Pick.*, 105. The case shows there was a conflict of testimony as to all the material facts in issue; it was therefore the right of the defendants to have any rule of law applicable in any state of facts in the case given in charge to the jury.

If the jury found that the representations charged in the answer were made fraudulently by the plaintiff, the proposition under consideration was material in directing their verdict; and since the rights of the defendants may have been materially injured by the refusal of the Court to instruct the jury as requested, the exception must be sustained.

The first request submitted by the plaintiff is a general rule which would be correct in some cases of sales, where the rule *caveat emptor* applies, and may have been applicable in certain theories of this case. Since the case does not contain much of the testimony, and neither shows nor enables us to determine that the charge excepted to was not applicable in some view of the case, we do not think the exception should be sustained. The exception to the charge of the second request submitted by the plaintiff is not urged by the defendants.

For the errors indicated, however, a new trial should be granted. The judgment appealed from is reversed, and a new trial ordered.