## THE STATE OF KANSAS v. M. A. BROOKS.

No. 14,758.　(85 Pac. 1013.)

SYLLABUS BY THE COURT.

1. STATUTORY CONSTRUCTION—*Title of an Act—Comprehensiveness.* The title "An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes," is broad enough to cover a provision for the appointment of assistants to the attorney-general to prosecute offenses against the statute in case of the failure of the county attorney to do so.

2. NEW TRIAL—*Failure of Defendant to Testify—Consideration by the Jury.* To justify a reviewing court in ordering a new trial in a criminal case because of the infraction of the statutory rule that the omission of the defendant to testify shall not be considered by the jury, it must conclusively appear that the jury or some one of them in arriving at a verdict gave weight to the fact that the defendant did not take the stand in his own behalf, as a circumstance tending to establish his guilt.

3. INTOXICATING LIQUORS—*Nuisance—Knowledge of Owner of*

*Building—Evidence.* In a prosecution against the owner of a building for knowingly permitting its use in maintaining a nuisance, the state, after introducing sufficient evidence to justify a finding that the building was so used, may then, as tending to bring knowledge of that fact home to the defendant, show that it had the general reputation in the community of being used for that purpose.

Appeal from Wilson district court; LEANDER STILL-WELL, judge. Opinion filed June 9, 1906. Affirmed.

*C. C. Coleman,* attorney-general, and *E. D. Mikesell,* assistant attorney-general for Wilson county, for The State; *J. B. Wilson,* of counsel.

*P. C. Young,* for appellant.

The opinion of the court was delivered by

MASON, J.: M. A. Brooks appeals from a conviction under the statute (Gen. Stat. 1901, § 2489) making it an offense for the owner of a building knowingly to permit its use in maintaining what the prohibitory law denominates a common nuisance.

Complaint is made that the information was defective. There is nothing, however, to take the case out of the ordinary rule that in charging a statutory crime it is sufficient to follow the language of the statute, and that was substantially done in this instance.

The prosecution was instituted and conducted by an assistant attorney-general, appointed under the statute (Gen. Stat. 1901, § 2476) authorizing such appointments whenever the county attorney fails to prosecute violations of the law referred to. The contention is made that this part of the statute is void because not covered by the title under which it was enacted. It first appeared as a part of section 11 of chapter 149 of the Laws of 1885, the title of which read: "An act amendatory of and supplemental to . . . an act entitled 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and

mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes.' "

"A title fairly expressing the general subject covers provisions for all proper means and instrumentalities which will or may facilitate the accomplishment or enforcement of the purpose expressed, such, for instance, as a provision prohibiting violations of the act, or prescribing a penalty or other punishment for such violations." (26 A. & E. Encycl. of L. 588.)

A provision intended to insure the prosecution of offenses against an act is as plainly adapted to the enforcement of its purpose as is one prescribing a penalty. The provision under consideration is of that character and is fairly within the scope of the title quoted.

The ownership of the building and its use for the prohibited purpose were expressly or substantially admitted. The vital question upon which the trial turned was whether the owner knew of the fact, the state relying upon circumstantial evidence to show such knowledge. The defendant did not testify. A motion for a new trial was filed upon the ground that his omission to do so was considered by the jury, and the denial of this motion is assigned as error. Upon the hearing of the motion each juror testified orally. The defendant claims that the evidence of misconduct of the jurors in this regard was as strong as that presented in *The State v. Rambo*, 69 Kan. 777, 77 Pac. 563, and that under that authority the decision of the trial court must be reversed. There it was held that the evidence compelled the conclusion that at least one juror had been influenced in his judgment by the fact that the defendant had not taken the stand in his own behalf. In the present case there was testimony that one member of the jury in the course of their deliberations used this fact as an argument in favor of conviction. This juror himself, while he did not in set terms deny having used the language attributed to him, swore that he had no recollection of having done so. This was

12—74 KAN.

a sufficient challenge of the truth of the testimony referred to so that an issue of fact was raised. For anything that appears in the record the trial court may have believed that the objectionable argument was not in fact made. This belief would amount to a finding of fact, which cannot be reviewed here, for it depended upon the credence and weight to be given to oral testimony, and derived some support from the probability that the juror charged with the misconduct would have remembered it if it had taken place. But even had the evidence in support of the motion not been contradicted, either directly or inferentially, no reason is apparent why the trial court was compelled to accept it as true; to determine its truth was one of the functions of the tribunal to which it was presented.

Assuming, however, as an established fact that a juror did at one time in the course of discussion offer as a reason for believing the evidence against the defendant that he had not denied it, other considerations prevent this fact from necessitating a new trial. The court gave an instruction that the omission of the defendant to testify raised no presumption against him and could not be considered by the jury. The evidence upon the motion for a new trial was to the effect that at several times during the deliberations of the jury the failure of the defendant to testify was mentioned in such a way as to suggest an inference against him; but it further appeared that upon each of such occasions attention was called to the instruction referred to, and that thereupon the statement was made and acquiesced in by all that the matter was one to which no force could be attached. Whether this shows a violation of the law depends upon the precise meaning to be given to the word "considered" as used in the statute, which reads:

"The neglect or refusal of the person on trial to testify . . . shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case, nor shall the same be

considered by the court or jury before whom the trial takes place." (Gen. Stat. 1901, § 5657.)

The prohibition cannot reasonably be construed as absolutely forbidding the court and jury to take any thought whatever regarding such omission of the defendant—to deny it entrance to the mind in any aspect. Such a requirement would be impracticable. The very reference to the matter in the instructions of the court would be a violation of the law under such a construction. The statute provides that the prosecuting attorney must not refer to the circumstance that the defendant has not testified, but the language with regard to the court and jury is different; they must not consider it—that is, give weight to it in arriving at a decision, attach to it the force of evidence, or draw any inference from it. Whether in this case the prohibition was disregarded, whether the jury or any one of them did consider the defendant's failure to take the stand in his own behalf—did permit that circumstance to weigh against him, was a question of fact to be determined by the trial court upon oral evidence which was not wholly harmonious and from which different inferences might reasonably have been drawn. Under such circumstances we cannot say that a wrong conclusion was reached or that a new trial should have been granted.

After abundant evidence had been introduced to prove that the defendant's building had been used as a place where intoxicating liquors were sold in violation of law, the state was permitted over the defendant's objection to show that such illegal use was a matter of general reputation in the community, and this ruling is complained of as error. Of course the state could not have been permitted to show that the place in question was commonly reputed to be a liquor nuisance for the purpose of establishing that it was such in fact; but when sufficient proof had otherwise been made of its real character evidence that such character was a

matter of public notoriety was competent as bearing upon the probability of notice thereof having reached the defendant, who was engaged in business in a neighboring building. For illustrations of this method of proof see volume 3 of Wigmore on Evidence, section 1789; also, in volume 1, sections 245, 254, 255, and especially section 257, where it is said:

"Where a statute forbids the selling of liquor to a person of known intemperate habits, the *reputation* of the vendee for *intemperance* is relevant to show probable knowledge by the seller."

In support of this statement the author quotes from *Ward and Thompson v. Herndon,* 5 Porter (Ala.) 382: "No man is presumed to be so much of a recluse as not to know what is generally known and talked of in his neighborhood." (Page 385.)

Various other assignments of error have been made. All have been examined and are held to be not well taken, but only those already mentioned are thought to require discussion. The judgment is affirmed.

All the Justices concurring.