## ANNA CONNELLY OLSEN v. EDDY E. BILLBERG.[1]

March 19, 1915.

Nos. 19,201—(305).

**Election — violation of Corrupt Practices Act.**

1. Publishing and distributing a circular to influence voting which falsely accuses a candidate of trickery and deceit in his campaign, and falsely imputes to him disreputable private and official conduct, is a violation of the Corrupt Practices Act which cannot be disregarded as immaterial or trifling.

**Same — by innuendo.**

2. If the language used would naturally tend to induce a belief that the candidate had been guilty of disreputable conduct or practices, the law cannot be evaded by framing the statement so as to avoid a direct assertion to that effect.

**Same — removal from office.**

3. If the successful candidate has published and distributed such circulars, the defeated candidate may maintain a contest to oust him from office.

**Same.**

4. The false statements and insinuations concerning contestant published and circulated by contestee were "deliberate, serious and material" within the meaning of the law and disable him from holding the office to which he was elected.

Anna Connelly Olsen instituted a contest in the district court for Roseau county to cause Eddy E. Billberg to be removed from office of county superintendent of schools in that county for violation of Laws 1912, p. 23, c. 3. The matter was heard before Watts, J., who made findings and ordered judgment against petitioner. From the judgment entered pursuant to the order for judgment, contestant appealed. Reversed.

*Charles Loring* and *G. A. Youngquist,* for appellant.

*W. E. Rowe,* for respondent.

[1] Reported in 151 N. W. 550.

TAYLOR, C.

At the last election, contestant and contestee were opposing candidates for the office of county superintendent of schools for the county of Roseau. The contestee received a majority of the votes cast and was declared elected. The contestant does not claim to have been elected, but instituted a contest on the ground that the contestee had violated the Corrupt Practices Act. The trial court rendered judgment of dismissal and contestant appealed.

The statute under which this proceeding is brought was fully considered and its validity upheld in Saari v. Gleason, 126 Minn. 378, 148 N. W. 293. It provides that a defeated candidate may contest the right of the successful candidate to hold the office "on the ground of deliberate, serious and material violation of the provisions of this act or of any other provisions of law relating to nominations and elections." Section 599, G. S. 1913. Contestant charges that contestee violated the following provisions of the statute:

"Any person or committee who shall publish, issue or circulate, or cause to be published, issued or circulated, otherwise than in a newspaper, as provided in section 2 (568) of this act, any literature or any publication tending to influence voting at any primary or election which fails to bear on the face thereof the name and address of the author, the name and address of the candidate in whose behalf the same is published, issued or circulated, and the name and address of any other person or committee causing the same to be published, issued or circulated, and any person, firm, corporation or committee who shall knowingly make or publish or cause to be published, any false statement in relation to any candidate or proposition to be voted upon, which statement is intended to or tends to affect any voting at any primary or election, shall be guilty of a misdemeanor." G. S. 1913, § 573.

Between the primary and the election, the contestee published and distributed two circulars tending and intended to influence voting at the election. The first was entitled "Good Reasons Why You Should Vote For Billberg," and stated, among other things, that "he holds a first grade Minnesota certificate earned in the

129 M.—11.

State Normal School at Moorhead." Contestant wrote to the Normal School and also to the state superintendent inquiring as to the correctness of this assertion. The president of the Normal School replied that Billberg had attended that school 39 days in 1905, and 45 days in 1909, and had earned credits in certain specified subjects. The assistant state superintendent replied that Billberg had held a first grade certificate, but that it had expired in August, 1913, and could not be renewed unless he had complied with the renewal requirements. He had not complied with such requirements, and was not entitled to have his certificate renewed. Contestant published these letters in a newspaper. Thereupon contestee issued a second circular from which we quote the following:

"My opponent tries by supposed-to-be quotations of correspondence secured from Mr. Cesander, Ass't State Supt., and Frank A. Weld, Pres. of the Moorhead Normal School, to disprove my qualifications for the office of Co. Superintendent.

"Is my opponent sure that her quotations from that Moorhead letter are correct and in full? We cannot believe it, as it does not comply with facts.

"Would my opponent dare to explain to the voters why she held this malicious charge back until the eleventh hour? Thinking perhaps, that I would have insufficient time to reach the voters before election.

"Does my opponent believe that she can, by political trickery, lead intelligent voters with an iron hand against an opposition that should venture to contest the place with her?

"She has neglected to publish her certificate record of the last ten years in order to prevent the voters from making an intelligent comparison. Has she made it clear before the voters the manner in which she secured her standing or certificate? Would she ever dare to make that public?

"Does my opponent think that the only way of campaigning is that of slander? Can it be after so many years in office that 'mudslinging' is the only weapon a would-be educator can resort to for retaining her office?

"Would she like to have the darker side of her private and official life made known?

"Is it proper before the state moral and corrupt practices act to use the teachers employed throughout the county and the children in school attendance to distribute literature and otherwise be instrumental in campaigning for the present superintendent?

"I believe that the day has come when the voters of our fair county shall demand a higher standing of moral character in the one who shall have charge of the schools."

At the time the above was published, contestant was county superintendent of schools and had been for several years.  The trial court found as a fact that there was no reasonable excuse for the insinuations contained in the circular, and that the statement that the Moorhead letter "does not comply with facts" was not true, but held that neither of the circulars "were deliberate, serious and material violations of the law relating to elections."

It is conceded that the circulars were issued for the purpose of influencing the voters, and that they did influence the voters; also that contestant's public and private life was without blemish and above reproach.  The circular accused her of political trickery, intimated that she had falsified the Moorhead letter, and, by insinuation and innuendo, made an unwarranted and inexcusable attack upon her official and private character.  The voters could well understand the insinuations as meaning that she had secured her standing and certificate in some underhanded and reprehensible manner; that her life had a dark and unsavory side; and that she did not possess the moral character which they ought to require in the one they placed in charge of their schools.  And insinuations reflecting upon the private life and moral character of a woman are quite liable to be given a sinister meaning.

It is said in the Saari case (126 Minn. at page 382)[1] that the statute "excludes a candidate, employing unlawful means, from enjoyment of a particular office under an election which his own acts have rendered of no effect.  It prevents his reaping the benefit of his own wrong.  It says, not that he is ineligible to this office,

[1] [148 N. W. 295.]

but that he must use honest means to obtain it." * * * And at page 385 that "the provisions giving the right of contest, on the ground only of 'serious and material' violations of the act, mean, not that the court may disregard any of the provisions of the statute as not serious or material, but that acts of the candidate which are immaterial or trifling shall not be deemed subject to the prohibitions of the statute."

The statute prohibits any person from knowingly publishing "any false statement in relation to any candidate * * * which statement is intended to or tends to affect any voting at any primary or election." A false statement made by plain insinuation is as reprehensible as if made directly, and is equally within the condemnation of the statute. If the language used would naturally tend to induce a belief that the candidate had been guilty of disreputable conduct or practices, and was intended to create such belief, and the fact insinuated be not true, the author cannot evade the law by framing his statement so as to avoid a direct assertion.

The language used by the contestee was used deliberately. There was no basis whatsoever for the insinuations; and the only question is whether they were so immaterial or trifling that they may be disregarded as not within the purview of the statute. They were material for they were of a character likely to, and which did, influence the voting. They were not trifling, but serious, for they conveyed an imputation that contestant had used trickery and deceit in her campaign; that she had been guilty of personal and official misconduct; and that her moral character was questionable.

The trial court made findings of fact in accordance with the undisputed evidence, and in its conclusions of law found that contestee had violated the statute, "but that such violation was not deliberate, serious and material." We are unable to concur in this last conclusion; and are of opinion that the violation was "deliberate, serious and material" within the meaning of the statute, and that the statute deprives the contestee of the right to hold the office.

The judgment is reversed with directions to amend the conclusions of law to accord with the views here expressed and to render a judgment of ouster.