# EDWARD W. HAWLEY v. JAMES F. WALLACE.[1]

June 8, 1917.

Nos. 20,513—(251).

**Election contest — publication of false matter — finding sustained.**

1. The evidence sustains a finding that the contestee in an election contest published, within the meaning of G. S. 1913, § 573, certain statements relative to the contestant.

**Same — violation of statute.**

2. Such statements were false statements relative to the contestant, were intended to affect voting at the election and tended to do so, were not trivial and unimportant but were deliberate, serious and material, and were in violation of G. S. 1913, §§ 573, 599, 600.

**Same — jurisdiction of court not affected by municipal charter.**

3. The charter of the city of Minneapolis, which provides that "the city council shall be the judge of the election of its own members," but does not make it the "sole" or "exclusive" judge, does not deprive the court of jurisdiction to entertain a contest under the general election law.

**Same — right to jury trial.**

4. A party to an election contest, though the basis of the contest is the violation of the Corrupt Practices Act and though it may result in an annulment of the election, is not entitled to a jury trial of the issues of fact under Constitution, art. 1, § 4, providing that "the right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy;" the effect of this provision being to recognize and to continue the right of jury trial as it existed in the territory at the date of the adoption of the Constitution, there being at that time no right to jury trial in similar proceedings and such a proceeding not being a case at law within the meaning of the Constitution.

**Same — contestee may be called as witness — privilege.**

5. The Constitution, art. 1, § 7, which provides that no person "shall be compelled in any criminal case to be a witness against himself," does not forbid the contestant calling the contestee as a witness, but when so called the contestee will not be required to give testimony to incriminate himself.

[1] Reported in 163 N. W. 127.

Edward W. Hawley appealed to the district court for Hennepin county from the action of the board of canvassers in declaring that James F. Wallace had been elected alderman from the Second ward of the city of Minneapolis at the November, 1916, election. The appeal was heard by Converse, J., who reversed the board and annulled the election. From the judgment entered pursuant to the order for judgment, James F. Wallace appealed. Affirmed.

*John N. Berg,* for appellant.
*Keith, Kingman, Cross & Wallace,* for respondent.

DIBELL, C.

At the November 7, 1916, general election Edward W. Hawley, the contestant, and James F. Wallace, the contestee, were rival candidates for the office of alderman of the Second ward of Minneapolis. Wallace received a substantial majority of the votes cast. Hawley contested the election upon the ground that Wallace violated the Corrupt Practices Act. The court so found and directed the entry of judgment annulling his election. Wallace appeals from the order denying his motion for a new trial.

1. The statute prohibits the publication of any false statement in relation to a candidate which is intended to affect voting at any election or tends to do so. G. S. 1913, § 573. Just prior to the election a pamphlet containing statements relative to Hawley was circulated in the Second ward. It is claimed by Hawley that this pamphlet was published or caused to be published by Wallace and this is an issue. It purports to have been printed and circulated by one Moody. Moody was a nephew of Wallace's wife, worked in Wallace's store, lived and boarded at the same house, and was actively interested in the campaign in Wallace's behalf. On the Saturday evening prior to the election Wallace knew that the pamphlet was in circulation and knew that it was of a character which made Hawley protest. The circulation continued and with his assent and assistance. He claims that he did not read the pamphlet. There was evidence of conversations had with Wallace after the election. What he said might be reasonably construed as an admission that he knew the general character of the pamphlet as early as Saturday and knew that some such pamphlet was to be published and circulated.

Moody was not a witness, nor was Madison, who was employed and paid by Wallace and was active in the circulation of the pamphlet.

The statute does not intend to punish one with the loss of an office to which he is elected because of statements circulated by his friends in which he does not participate. If it were otherwise, serious results might come to a candidate, himself entirely innocent, and the statute thus be made a means of fraud. Whether the successful candidate participated in the forbidden publication is a question to be determined upon a careful consideration and weighing of the evidence. A review of it in detail brings us to the conclusion that the court's finding that Wallace participated in the publication is sustained.

2. The statute is directed against "any false statement in relation to any candidate or proposition to be voted upon, which statement is intended to or tends to affect any voting at any primary or election" etc., G. S. 1913, § 573. The defeated candidate, or a specified number of voters, may contest. G. S. 1913, § 599. The successful candidate is not deprived of his office, if the publication was without his knowledge or sanction, or if the act of which complaint is made was trivial or unimportant. G. S. 1913, § 600.

The pamphlet was entitled "An Alderman with Clutch Trouble." It was some 20 pages in length and contained matter in criticism of Hawley. Under the head of "An $847 Grab" it was alleged that this amount was paid out of the permanent improvement fund for the condemnation of an alley and that Hawley participated in it; and the reason given for his doing so was that a person interested in the improvement, who would have had to help pay if it had been paid by special assessment against benefited property, was the brother of the owner of a leading local newspaper. Under the head of "Another Attempted Grab" it was stated that Hawley used his influence as a member of the fire department committee in getting a contract for a friend and sought to have him paid without his completing the contract. Under the heading "Hawley Favors Public Service Corporations" it was said, among other things, that Hawley refused to allow a real estate owner to plat certain property until he had given a certain amount of the land for the private use of a public service corporation. There was charges, in rather general terms, that in placing city insurance Hawley favored companies in

which his political friends were interested; that as a member of the committee on health he participated in an unfair and extravagant management of the health department; that he permitted certain of his political friends to conduct an offensive hide treating establishment without the required license; that he sought to railroad through the council a proposition to purchase at an exorbitant price unfit land for the burial of the indigent dead; that he was engaged in a secret and improper settlement with the gas company of the city's litigation over gas rates, and that in his official acts he favored the electric company at the expense of the city's interests.

The statute is directed against false statements relative to facts. It is not intended to prevent criticism of candidates for office nor to prevent deductions and arguments from their official conduct unfavorable to them. It does not reach criticism which is merely unfair or unjust. It does reach false statements of specific facts. Many of the statements contained in this pamphlet were not untrue and many were not legally objectionable. There was a skeleton of truth in connection with nearly all of them, for Hawley was a member of the council and was concerned in the transactions of which the pamphlet purported to give an account. The charge throughout was that Hawley had been dishonest and unfaithful in the conduct of his office. No one could have misunderstood it. It was more than an insinuation. It was not all innuendo. There were direct statements and charges of fact. Insofar as the charges exceeded criticism and were statements of specific acts of wrongdoing they were false statements of fact. They were intended to affect voting at the election and naturally tended to that result, and they were not trivial or unimportant but were deliberate, serious and material within the meaning of sections 599 and 600. They were fully as much within the condemnation of the statute as those considered and held forbidden in Olsen v. Billberg, 129 Minn. 160, 151 N. W. 550.

3. The charter of the city of Minneapolis provides that "the city council shall be the judge of the election of its own members," etc. The council is not made the "sole" or "exclusive" judge. The contestee contends that the common council alone has authority to determine the election of its members and that the court is without jurisdiction. There is some conflict among the authorities. This court, in accordance with

the weight of authority, has held that the district court has jurisdiction of a contest under the general election law. State v. Dowlan, 33 Minn. 536, 24 N. W. 188; State v. Gates, 35 Minn. 385, 28 N. W. 927; State v. Craig, 100 Minn. 352, 111 N. W. 3. See note 26 L.R.A.(N.S.) 207. This is the settled law of this state.

4. The contestee claims that the contest statute is unconstitutional because it does not provide for a jury trial. His contention is that under the Constitution he is entitled as of right to a jury trial. The Constitution, art. 1, § 4, provides that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy," etc. From the beginning it has been held that the effect of this provision is to recognize the right to a jury trial as it existed in the territory at the time of the adoption of the Constitution and to continue such right unimpaired. Whallon v. Bancroft, 4 Minn. 70 (109); St. Paul & Sioux City R. Co. v. Gardner, 19 Minn. 99 (132) 18 Am. Rep. 334; Ames v. Lake Superior & M. R. Co. 21 Minn. 241; Board of Co. Commrs. of Mille Lacs County v. Morrison, 22 Minn. 178; Bruggerman v. True, 25 Minn. 123; In re Howes, 38 Minn. 403, 38 N. W. 104; State v. Minnesota T. Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L.R.A. 510; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; State v. Kingsley, 85 Minn. 215, 88 N. W. 742; Peters v. City of Duluth, 119 Minn. 96, 137 N. W. 390, 41 L.R.A.(N.S.) 1044; State v. Ryder, 126 Minn. 95, 147 N. W. 953; Morton B. & T. Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527. At the time of the adoption of the Constitution the territorial statute gave a jury trial of issues of fact "in an action for the recovery of money only, or of specific real or personal property, or for a divorce from the marriage contract, on the ground of adultery." R. S. 1851, c. 71, § 6. The present statute is the same. G. S. 1913, § 7792. The term "cases at law" as used in the Constitution has been construed as referring to ordinary common law actions as distinguished from equity or admiralty causes and special proceedings such as *quo warranto, mandamus* and the like. State v. Minnesota T. Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L.R.A. 510. There is no right to a jury trial in an election contest. Whallon v. Bancroft, 4 Minn. 70 (109); Ford v. Wright, 13 Minn. 480 (518). Nor is there in *quo warranto*. State v. Minnesota T. Mnfg. Co. 40 Minn.

213, 41 N. W. 1020, 3 L.R.A. 510. We hold that a party to a statutory election contest has no constitutional right to a jury trial. We do not think the question doubtful. That Wisconsin, under a like constitutional provision, and in a similar election contest proceeding, adopts a contrary view is not important. State v. Markham, 160 Wis. 431, 152 N. W. 161. At the time of the adoption of the Wisconsin Constitution the statute gave a jury trial in *quo warranto* and that was the proceeding by which the title to office was tried. The constitutional right to a jury trial in one state may well enough differ from that in another though the applicable provision of the Constitution is the same in both.

The conclusion we reach might be supported upon the ground that the office involved is not a constitutional one and that the legislature which creates it may determine the method of trying the question of right to it. We prefer not to place our holding upon so narrow a ground. Nor from anything said should a holding be inferred that a failure to provide for a jury trial, if a party were constitutionally entitled to one, would render the statute unconstitutional, and that the court, in the absence of such provision could not call a jury.

5. The contestee was called for cross-examination under the statute. He objected upon the ground that the object of the proceeding was to oust him from office for the violation of a criminal statute and that under art. 1, § 7, of the Constitution he could not be compelled to be a witness. The objection was overruled. This ruling presents the remaining question. It has been argued at great length. Its solution is not difficult.

The violation of the statute upon which the contest is based constitutes a crime. G. S. 1913, § 573. So far as concerns the constitutional question it is not important whether the contestant called the contestee for cross-examination as an adverse witness or made him his own. The provision of the Constitution, so far as here material, is as follows: "No person * * * shall be compelled in any criminal case to be a witness against himself." This provision does more than relieve one from the necessity of being a witness in a criminal prosecution against himself. It protects him in any proceeding, civil or criminal, or in any investigation, from giving testimony tending to show that he committed a crime, though not then charged with it. Simmons v. Holster, 13 Minn.

232 (249); Emery's Case, 107 Mass. 172, 9 Am. Rep. 22; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. ed. 1110; People v. O'Brien, 176 N. Y. 253, 68 N. E. 353; 5 Jones, Evidence, § 884, et seq. An interesting account of the privilege against self-incrimination, both without and with constitutional sanction, is given by Dean Wigmore. 3 Wigmore, Evidence, § 2250, et seq.

No case is cited where the prosecution called the defendant as a witness in a strictly criminal case. We would not expect one. Such a course would be clearly wrong. Where a defendant is merely required to testify before the grand jury, and an indictment is returned against him on his evidence, it will be quashed. State v. Gardner, 88 Minn. 130, 92 N. W. 529; State v. Froiseth, 16 Minn. 296 (313). In a civil action a party may be called as a witness. If it is then sought to elicit from him incriminating testimony he may assert his constitutional privilege just as any witness may do. The contestee was not deprived of his privilege. He was given the opportunity to assert it but was required to submit himself to examination. Under the corresponding provision of the Federal Constitution, and under similar provisions of state constitutions, it is held that a preceeding to enforce a penalty or forfeiture because of the violation of a statute is a criminal action in the constitutional sense, and that a witness subject to such a proceeding can insist upon his privilege. In some cases the question arises when it is sought to make the defendant a witness in the proceeding to enforce the penalty or forfeiture; in others when it is sought to compel him to give testimony or disclose information which might be used against him in such proceeding.

The principle was applied in Boyd v. U. S. 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746, where it was sought to establish a forfeiture of goods fraudulently imported without the payment of duties; and in Lees v. U. S. 150 U. S. 476, 14 Sup. Ct. 163, 37 L. ed. 1150, where it was sought to recover a penalty for the illegal importation of aliens under contract to labor; and in In re Nickell, 47 Kan. 734, 28 Pac. 1076, 27 Am. St. 315; and Ex parte Gould, 99 Cal. 360, 33 Pac. 1112, 21 L.R.A. 751, 37 Am. St. 57, where it was sought to compel a witness charged with contempt to be a witness in proof of it; and in Robson v. Doyle, 191 Ill. 566, 61 N. E. 435; and Currier v. Concord R. Corpora-

tion, 48 N. H. 321, where it was sought by a bill in chancery to compel a defendant to disclose facts which would subject him to a penalty or forfeiture; and in Osborn v. First Nat. Bank of Athens, 154 Pa. St. 134, 26 Atl. 289, an action of assumpsit to recover penalities for the taking of usurious interest, where it was held that an affidavit of defense, such as was provided by the state practice, could not be required to prevent judgment as for want of it; and in Thurston v. Clark, 107 Cal. 285, 40 Pac. 435, a summary proceeding to remove an officer for wrong-doing, where it was held that he could not be required to testify against himself. And see 5 Jones, Evidence, § 892; 3 Wigmore, Evidence, § 2256, et seq.; 40 Cyc. 2533; 50 Cent. Dig. Witnesses, §§ 1018-1020; 20 Dec. Dig. Witnesses, 295.

The contestee cites as controlling State v. Markham, 162 Wis. 55, 155 N. W. 917. This was a proceeding to annul the election of a candidate because of a violation of the Corrupt Practices Act. The proceeding and the statute under which it was brought were much the same as the proceeding and statute before us. An order was obtained for the examination of the defendant before trial pursuant to the Wisconsin statute. 1915 St. c. 176, § 4096. The purpose of the examination was to show that the defendant was guilty of a violation of the statute and this would result in the annulment of his election. The order was dismissed because the statutory proceeding, "being an action to enforce a penalty or forfeiture for criminal misconduct, the defendant cannot be compelled to be a witness against himself therein." The examination before trial authorized by the Wisconsin statute is a substitute for a bill of discovery under the old chancery practice. Cleveland v. Burnham, 60 Wis. 16, 17 N. W. 126, 18 N. W. 190; Whereatt v. Ellis, 65 Wis. 639, 27 N. W. 630, 28 N. W. 333. Courts of equity did not, by a bill of discovery, compel a defendant to make a disclosure of facts which subjected him to a criminal prosecution or to a penalty of forfeiture. 1 Pomeroy, Equity Jurisprudence, § 202; 1 Daniell, Chancery Practice, 605; 4 Jones, Ev. §§ 702, 708; 6 Enc. Pl. & Pr. 742-744; 14 Cyc. 333-335. Such a bill was demurrable. The ruling of the Wisconsin court was in harmony with the chancery rule. We take it that this was substantially its extent.

So far as concerns the result it may be conceded, and it is not neces-

sary to go further, that the Constitution protects one against a disclosure which will subject him to a penalty or forfeiture as well as against a disclosure which will subject him to a criminal prosecution. To give one the full protection of the constitutional guaranty it is not necessary to hold that in an election contest proceeding, triable by the court, the contestee may not be called as a witness and examined subject to his constitutional privilege. Any testimony which would subject him to a forfeiture through the annulment of his election would, by force of the statute, subject him to a criminal prosecution, and the assertion of his privilege would protect him. A holding that the constitutional right of the contestee is invaded when he is called as a witness, but is given freedom from self-incrimination, is unsupported by direct authority and is without substantial legal basis. There was no error in permitting the contestee to be called as a witness. When a witness he was entitled to the constitutional protection against self-incrimination. It may be noted that the election contest is in its general characteristics a civil proceeding and it was so considered in Miller v. Maier, 136 Minn. 231, 161 N. W. 513, and Saari v. Gleason, 126 Minn. 378, 148 N. W. 293.

Order affirmed.