L. T. BERG AND OTHERS v. CHARLES PENTTILA.[1]

February 10, 1928.

No. 26,284.

**Defendant deprived of his constitutional right in respect to two charges.**

1. In a proceeding to remove the appellant from office for a violation of the corrupt practices act, it is *held* that he was deprived of his constitutional right against self-incrimination in respect of two charges made against him of failing to make and file the financial statement required by the act.

**Corrupt practices act violated by candidate's promising public employment as aid to his election.**

2. The evidence sustains the trial court's findings that appellant violated the corrupt practices act by promising public employment in order to aid and promote his election.

**Such violations were not so trivial as to prevent forfeiture of his office.**

3. The court did not err in refusing to find that the charges in response to which the findings mentioned in the preceding paragraph were made were trivial, unimportant and limited in character within

[1]Reported in 217 N. W. 935.

the meaning of the corrupt practices act and were not of such character that he should be relieved from a forfeiture of his office.

**His refusal to give incriminating testimony did not justify an inference of his guilt.**

4. The defendant's refusal to testify upon the ground that his testimony might incriminate him did not justify an inference of guilt and was not an element of proof against him.

**Error for trial court to treat his insistence on his right as tending to show his guilt.**

5. The trial court in making its findings, as indicated by its memorandum, treated the insistence of the defendant upon his constitutional right against self-incrimination as tending to show guilt and as an element of proof against him. This was error.

Elections, 20 C. J. p. 185 n. 51.
Witnesses, 40 Cyc. p. 2535 n. 90; p. 2552 n. 19.

See 9 R. C. L. 1180; 2 R. C. L. Supp. 936; 4 R. C. L. Supp. 637.
See 28 R. C. L. 428; 4 R. C. L. Supp. 1824; 5 R. C. L. Supp. 1537.

Defendant appealed from an order of the district court for St. Louis county, Fesler, J. denying his motion for a new trial. Reversed.

*Fryberger, Fulton, Hoshour & Boyle* and *McMahon & McMahon,* for appellant.

*Giblin & Manthey,* for respondents.

PER CURIAM.

This is a proceeding instituted by 25 voters under G. S. 1923, § 538, et seq. the corrupt practices act, to contest the right of Charles Penttila to the office of county commissioner of St. Louis county to which he was elected at the November, 1926, general election. The court found seven material violations of the corrupt practices act and directed the entry of judgment declaring his election void, ousting him from office and declaring the office vacant. He appeals from the order denying his motion for a new trial.

The appellant makes these claims:

(1) That he was deprived of his constitutional right against self-incrimination.

(2)   That the evidence does not sustain the trial court's findings that he violated the corrupt practices act by promising public employment in order to aid and promote his election.

(3)   That the court erred in refusing to find that the charges found true were trivial, unimportant and limited in character within the meaning of G. S. 1923, § 571, and not of such character that he should forfeit his office.

(4)   That the defendant's refusal to answer certain questions, when called by the petitioners, upon the ground that his answers would tend to incriminate him, did not justify an inference of guilt and was not proper in proof thereof.

(5)   That the trial court erred in considering such refusal as justifying an inference of guilt or an element of proof of guilt.

1.   Const. art. 1, § 7, provides that no person "shall be compelled in any criminal case to be a witness against himself." This provision protects a witness from giving testimony tending to incriminate him though he is not then charged with crime and though the action or proceeding in which he testifies is a civil one. Simmons v. Holster, 13 Minn. 232 (249); Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127; 4 Wigmore, Ev. (2 ed.) § 2252, 1 (a, b, c); 6 Jones, Ev. (2 ed.) § 2483.

The first charge found true was that Penttila failed to file a verified financial statement showing the receipt from one Murphy of $200 a few days before election or to include the same in his statement.   The second charge found true was of like character and related to the receipt of money from one Isaacson.

Penttila was called for cross-examination under the statute.   It is not claimed that he might not be so called.   Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127.   He was required by the court to answer, over his objection that his answers might incriminate him, questions bearing upon the two charges mentioned.   The examination was persistent.   Some of the answers were in the nature of direct proof against him and others were important links in the chain of proof.   In effect petitioners, over his objection, were permitted to prove the first two charges through the denial to him of *his constitutional privilege of remaining silent.*   It was of course

for the court to rule on his claim of privilege. State v. Thaden, 43 Minn. 253, 45 N. W. 447. There was error in denying it. This error relates only to the first two charges and does not of itself disturb the result of the trial, for in other distinctly separate charges, found true and sufficient in themselves to warrant the result reached, he was protected in his privilege.

2. The other five charges found true related to offers of public employment by Penttila in order to aid and promote his election. The evidence sustains the findings upon these charges. It is enough, and we are not called upon to detail or discuss it.

3. The evidence does not require a finding that the offenses of the appellant in respect of the five charges were "trivial, unimportant or limited in character," as these words are used in § 571, or that they were of such character that the appellant should be relieved of the penalty of the statute. They were found to be deliberate and serious upon sufficient evidence. See Olsen v. Billberg, 129 Minn. 160, 151 N. W. 550; Miller v. Maier, 136 Minn. 231, 161 N. W. 513, 2 A. L. R. 399; Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127.

4. In cross-examination under the statute the appellant was asked relative to conversations with the men to whom it was claimed he had offered employment in aid of his election. He claimed his constitutional privilege and was not required to testify. Later he took the stand and testified in his own behalf. While protected in his refusal to answer, he claims that such refusal was used by the court in such way that his constitutional right was in substance denied him. His specific claim is that his refusal was made the basis of an inference of his guilt. Dean Wigmore says:

"The question whether an inference may be drawn from a person's exercise of his privilege is one which may well puzzle by its anomalies. Both principle and expediency are involved. The layman's natural first suggestion would probably be that the claim was a clear confession of the criminating fact. The lawyer's natural first answer would certainly be that then the privilege would thereby be annulled. Both of these have a truth, but only a partial

truth. The nature of the issue should not be lost sight of." 4 Wigmore, Ev. (2 ed.) § 2272.

The rule seems to be general, and we adopt it, that an inference of guilt in the eye of the law does not arise from a valid claim of constitutional privilege. 4 Wigmore, Ev. (2 ed.) § 2272; 6 Jones, Ev. (2 ed.) § 2495; 40 Cyc. 2551; Am. Dig. Wit. § 309; Carne v. Litchfield, 2 Mich. 340; People v. Maunausau, 60 Mich. 15, 26 N. W. 797; State v. Weber, 272 Mo. 475, 199 S. W. 147; State ex rel. v. Indiana Mfrs. of Dairy Products, 198 Ind. 288, 153 N. E. 499; McClure v. State, 95 Tex. Cr. 53, 251 S. W. 1099; Waer v. Waer (N. J. Ch.) 90 A. 1039; Masterson v. St. Louis Transit Co. 204 Mo. 507, 103 S. W. 48; Lloyd v. Passingham, 16 Ves. Jr. 59.

The cases arise under varying circumstances. The witness asserting the privilege may be a party or he may not be; he may have offered himself as a witness and have waived his privilege; he may be asserting his privilege when questioned on legitimate cross-examination; the privilege may have been asserted in another action and evidence of it sought to be shown in a later action; or, as in this case, the party asserting the privilege may have been called to prove his adversary's case. We do not stop to analyze or distinguish the cases. It should be noted that not all the cases accept the doctrine which we have stated and adopt. The following are opposed. Andrews v. Frye, 104 Mass. 234; Morris v. McClellan, 154 Ala. 639, 45 So. 641, 16 Ann. Cas. 305; Leverett v. State, 18 Ala. App. 578, 93 So. 347; Morgan v. Kendall, 124 Ind. 454, 24 N. E. 143, 9 L. R. A. 445. Others perhaps might be found.

A reason for the rule which we adopt is neatly expressed in Phelin v. Kenderdine, 20 Pa. 354, 363:

"When a witness declines answering a question, upon the ground of its tendency to criminate himself, the objection is addressed to the Court, and the decision upon it is to be made by the Court, and not by the jury. If the privilege claimed by the witness be allowed, the matter is at an end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the

legal assertion by the witness of his constitutional right. The allowance of the privilege would be a mockery of justice, if either party is to be affected injuriously by it. The exercise of this right by the witness is not under the control of the parties, and no one can be affected by evidence which his adversary fails to produce, and which, therefore, cannot be met or explained by cross-examination, rebutting evidence, or otherwise."

It would be error under this doctrine to charge the jury that from appellant's assertion of privilege guilt could be inferred or that his claim had a tendency to show guilt. Such an inference may be logical; but that it not the question. The constitution intends protection against self-incrimination, and it gives none if the claim of constitutional privilege justifies an inference of guilt or of the fact sought to be proved. Thus Dean Wigmore in § 2272 [4 Wigmore, Ev. (2 ed.)] continues:

"The inference, as a mere matter of logic, is not only possible but inherent, and cannot be denied.

"Yet, though not denied, can it not be ignored? This is the true question,—whether, in view of our trial methods, it is possible and proper to insist on the practical ignoring of this inference. If our trial tribunals were not divided in function, and if issues of fact and law came equally to the judge's mind for decision, the question would be a mere quibble, because the judge could hardly perform the impossible feat of ignoring the operations of his own mind. But since the jury, and the counsel's efforts with the jury, are more or less within the control of the judge irrespective of his own mental operations, it remains after all a practical question whether principle and expediency require us to prevent, so far as feasible, any further use of the inference than such as is inevitable from the mere disclosure of the claim. Perhaps the jury can effectively be instructed on the subject; at any rate, the comment by counsel can be prohibited. Thus the question ceases to be merely one of mental gymnastics, and is after all worth attempting to solve."

A very practical illustration of this thought is found in State v. Brooks, 74 Kan. 175, 85 P. 1013, where the court drew away from

its holding in State v. Rambo, 69 Kan. 777, 77 P. 563, and which it later discredited in State v. Dreiling, 95 Kan. 241, 147 P. 1108. The trial court had instructed the jury, as properly it might under the statute, that no unfavorable presumption arose from a failure to testify. It was sought to impeach the verdict, as the Kansas law permits, by showing that the jury did consider the failure of the defendant to testify. The supreme court said [74 Kan. 178]:

"The evidence upon the motion for a new trial was to the effect that at several times during the deliberations of the jury the failure of the defendant to testify was mentioned in such a way as to suggest an inference against him; but it further appeared that upon each of such occasions attention was called to the instruction referred to, and that thereupon the statement was made and acquiesced in by all that the matter was one to which no force could be attached."

Thus a finding upon the question of undue influence in the making of a will based upon the wrong test as to the nature of the proof required is erroneous. Boardman v. Lorentzen, 155 Wis. 566, 145 N. W. 750, 52 L.R.A.(N.S.) 476; Ball v. Boston, 153 Wis. 27, 141 N. W. 8. In such a case the finding is the result of a misconception of the law or of the application of a wrong rule. In the last case it was said [at p. 34]:

"They [findings] have no force at all in case of the result having been reached by misconception of the law."

So in Maldaner v. Smith, 102 Wis. 30, 78 N. W. 140, where the trial court applied the wrong presumption as to the effect of the interlineation in a note, the court, holding the finding for such reason erroneous, said [at p. 38]:

"That situation is so clear that there is no reasonable explanation of the decision appealed from, other than that the erroneous idea of the law expressed by the court, that the existence of the interlineation raises a presumption that it was made after delivery, had great weight in the judicial mind and turned the scales against the plaintiff."

In this case Penttila was called to the stand to prove the case of his adversaries. Of the cases cited the following are in this respect similar: Carne v. Litchfield, 2 Mich. 340; Morgan v. Kendall, 124 Ind. 454, 24 N. E. 143, 9 L. R. A. 445; Morris v. McClellan, 154 Ala. 639, 45 So. 641, 16 Ann. Cas. 305; State ex rel. v. Indiana Mfrs. of Dairy Products, 198 Ind. 288, 153 N. E. 499. In these cases the defendant was called by the plaintiff as a witness or interrogatories were propounded to him, and he asserted his right of privilege. In Morgan v. Kendall, 124 Ind. 454, 24 N. E. 143, 9 L. R. A. 445, it was held that his refusal to testify was a proper subject of comment to the jury. In Morris v. McClellan, 154 Ala. 639, 45 So. 641, 16 Ann. Cas. 305, there was a like holding. In the Carne case the defendant was called by the plaintiff and claimed his privilege. It was held improper to comment upon his refusal to testify as furnishing evidence of guilt to be considered by the jury. In State ex rel. v. Indiana Mfrs. of Dairy Products, 198 Ind. 288, 153 N. E. 499, the defendant was called by the plaintiff and allowed his privilege. The court held that his refusal to testify could not be used in making out a case against him, saying [at p. 299]:

"It is not permissible to make out a cause of action by merely accusing the defendant and calling him as a witness to prove the accusation, and then treating his refusal to waive his constitutional rights and testify against himself as proof that the accusation is true. Such a rule would nullify the constitutional privilege."

The same result was reached in Lloyd v. Passingham, 16 Ves. Jr. 59. The defendant demurred to so much of a bill as sought a discovery of the facts which might have a tendency to incriminate him; and the court held that the demurrer could not be considered as admitting the allegation of the bill and so destroying the privilege.

We hold that the defendant's refusal to testify, upon the ground that his testimony might incriminate him, did not justify an inference of guilt and was not an element of proof against him.

5. In a memorandum accompanying its findings the court said:

"The majority of offenses found true are all but admitted by the respondent. His refusal at first to testify on the ground that his

answers might incriminate him rather discredited his subsequent denials and explanations. It is a right which the respondent had, but rarely is such a right asserted by an innocent man."

In a memorandum attached to the order denying a motion for new trial the court adhered to the view expressed in the language quoted, and indicated that the memorandum might be considered a part of the findings.

In Standard Salt & Cement Co. v. Commercial Cas. Ins. Co. 171 Minn. 39, 213 N. W. 543, it is held that a memorandum may be used to illustrate and explain the findings of the court. In that case except for the memorandum the judgment would have been reversed. The memorandum saved it. Here the claim is that the memorandum vitiates the result of the trial because it shows that the findings were reached by a misconception or misapplication of the law similar to that in the cases noted in the preceding paragraph.

The defendant's insistence upon his constitutional right to remain silent was an important factor in the trial court's mind tending to show his guilt. The view was that the law sanctioned an unfavorable inference from a claim of constitutional right and that such claim was to be used in proof of guilt. Therefore, within the cases cited in the preceding paragraph, the defendant's claim of privilege was not protected and the law was misapplied.

Order reversed.

DIBELL, J. (dissenting).

I dissent from the conclusion reached.

I am in accord with the holding of paragraph 1 that the defendant was deprived of his constitutional right against self-incrimination in respect of the two charges of failing to make and file his financial statement.

I agree with the holding of the second paragraph that the court was justified in finding that the defendant violated. in several instances the corrupt practices act by promising public employment to aid his election; and I agree that the court did not err in refusing to find that such acts were trivial and unimportant and not of such character that they should result in a forfeiture of office.

In the matter of calling a party to the stand under cross-examination and putting him to an assertion of his constitutional privilege, and then referring unfavorably to his exercise of his privilege, I am in accord with the law of the Indiana court quoted in the prevailing opinion in a case similar to the one at bar, but not quite the same; for Penttila later went on the stand in his own defense and apparently testified to the things about which he would have been interrogated. Whether this is a differentiating circumstance I do not consider. Conceding that all stated in paragraph 4 is correct, still the appellant cannot prevail unless the court wrongly viewed the effect of his claim of privilege as paragraph 5 of the prevailing opinion holds.

The language used by the trial judge in his memorandum does not show in my view in any substantial way that he found against Penttila because of his successful claim of privilege. He was strongly impressed with the view that Penttila had violated the corrupt practices act. He thought that "the majority of the offenses found true are all but admitted by the respondent." He referred to the defendant's claiming his privilege and made his comment. It would not be surprising if there were found in the opinions of this court passing remarks of like import. This thought was not the basis of the trial court's decision; the finding was not the result of a misapplication of law by the court; and the result of a fairly tried case is changed by a technical interpretation of the trial court's viewpoint, and not one which should be ascribed to it, when it was surely not a controlling or important factor in its finding. I think the order for an annulment of the election and the forfeiture of the defendant's office should stand.

STONE, J.

I concur in the views of Mr. Justice Dibell.