# ELLSWORTH MARIETTE AND OTHERS v. STUART MURRAY.[1]

## No. 28,887.

### April 8, 1932.

[1]Reported in 242 N. W. 331.

*Fryberger, Fulton & Boyle, Essling & Bundlie,* and *William A. Anderson,* for appellant.

*Giblin & Manthey* and *J. A. Lovallo,* for respondents.

OLSEN, J.

Appellant, Stuart Murray, appeals from an order denying his motion for a new trial.

The proceeding is under the corrupt practices act, G. S. 1923 (1 Mason, 1927) §§ 538–601, to contest the election of appellant to the office of county commissioner for the sixth commissioner's district of St. Louis county. The contest is brought by 35 voters of the district. The election was the general election held November 4, 1930. Appellant and one Dan MacKenzie were candidates for the office of county commissioner at that election. The appellant received a substantial majority of the votes cast and was declared elected. This contest followed.

The trial court found that appellant had violated the law referred to in three particulars, and directed judgment to be entered decreeing that his election to said office was null and void and that he be ousted from office.

The first charge found sustained by the court is that appellant in his campaign disbursed and became obligated to make disbursements in excess of the amount he was entitled to spend in his campaign for election. The salary for the office is $4,000 per year, and appellant was entitled to spend for campaign purposes $1,333.33.

Appellant reported expenditures of $130 as spent by him. A political committee, designated as a "voluntary political committee" to assist in his election, spent $3,084.95 in the campaign for his nomination and election. The court found that this so-called voluntary committee was in fact the personal campaign committee of the appellant and that the expenditures made by it were made for and on behalf of the appellant, with his knowledge, consent, and approval, and that such committee was organized as a subterfuge on the

part of appellant's supporters and appellant in an attempt to evade the corrupt practices act.

These findings are challenged as not sustained by the evidence.

■ The corrupt practices act mentions three different kinds of committees: (1) A personal campaign committee, which is authorized to expend money in the campaign only for the purposes specified in § 554 and whose expenditures are charged as expenditures made by the candidate, so that the total expenditures by the candidate and by his personal campaign committee shall not exceed the amount that the candidate is authorized ·to expend; (2) a party committee, appointed or elected to represent an organized political party in this state; (3) a political committee, consisting of two or more persons who shall coöperate in the raising, collecting, or disbursing of money used or to be used for or against the election to public office of any person or any class or number of persons, or for or against any measure to be voted upon at an election.

The law carefully prescribes the purposes for which a candidate, a personal campaign committee, and a party committee may disburse money or incur indebtedness in the campaign, limits the amounts to be so expended, and provides what reports shall be made by each.

■ When it comes to a political committee, the law is not so definite. Such a committee may not publish advertisements in the newspapers except in the manner prescribed in § 539. It may not issue or circulate campaign literature except in the form provided in § 544. It may not do any of those things which persons or associations generally are forbidden to do in a campaign. In other words, its activities must be confined to lawful purposes and be carried out in a lawful manner. The law places no definite limitation upon the amount of money which such a committee may raise, collect, or expend. It cannot receive contributions from corporations. § 563. It is not limited as to the amount of contributions it may receive from individuals or firms. § 545 (2). It is required to file statements of the total amount of receipts and disbursements and for what purposes such disbursements were made within 30

days after any primary or election. G. S. 1923, § 556, subd. 3 (e), Mason, 1931 Supp. id. The law does not provide how such a committee shall be organized. This brief background is relevant in a consideration of the question presented.

■ The committee here in question was organized under written articles of association as a voluntary political committee "to assist by lawful means in the election" of appellant. The committee was organized at a meeting in the courthouse, either in appellant's office or in the office of the county engineer. Mr. Grove Wills, a newspaper editor and proprietor at Eveleth, was chairman of the committee and had charge of its activities. Mr. Sullivan, the secretary of the committee, was the clerk in appellant's office of county commissioner at Virginia, the office being in the courthouse at that place. The members and workers of the committee were mostly county employes in the commissioner district, employed in highway matters and other county activities. We may infer that these employes were under the supervision and control of appellant to some extent in their employment. The chairman and other members of the committee consulted to some extent with appellant about the campaign. It does not appear that he controlled the activities of the committee or gave directions to its officers or members, except that he furnished some information and some statements for use in campaign literature. It was the plan of the committee to work independently, and it was understood by the committee and appellant that the campaign expenses were to be carried by the committee so that such expenses should not be incurred by appellant. Some of the newspaper advertisements and literature published and circulated by the committee were in the form of letters or statements, whereto appellant's name was attached, as coming from him. He had knowledge of this use of his name and partly prepared some of this matter. There is no evidence that appellant contributed any money to the committee. He did not have any cards printed for himself, as he found there were plenty of cards being printed. It is not shown that the committee, as a political committee, violated the law or engaged in any unlawful activity.

The finding that this committee was appellant's personal campaign committee appears to us to lack sufficient support in the evidence. We cannot hold that a candidate may not give some assistance in the way of information or material for campaign literature and for campaign purposes to a political committee so long as he contributes no funds to it; nor does the fact that the candidate knows of and consents to the use of his name and statements in campaign literature seem sufficient to make the committee a personal campaign committee. A political committee which could make no contact with the candidate would probably find difficulty in working for his election. There is no statutory prohibition against such contact. The fact that the law permits the organization of a political committee and its participation in election campaigns may seem somewhat inconsistent with other provisions of the corrupt practices act, but that is a matter for the legislature and not for the courts.

The committee was composed largely of county employes in the district over whose employment appellant had more or less control. He was in close contact with them in that respect. Respondents contend that under the evidence here the committee was the agent of appellant and made the expenditures for him. The case of State ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N. W. 895, 69 A. L. R. 348, is cited. We find nothing in that case decisive of the question before us. The Wisconsin statute, as shown in that case, contains no provision for or reference to a "political committee." It provides only for a party committee and a personal campaign committee. The questions of agency and whether disbursements had been made by agents of the candidate were involved. When the case was again before the court in State ex rel. La Follette v. Kohler, 202 Wis. 352, 232 N. W. 842, 69 A. L. R. 348, the court construed the language of the statute limiting expenditures "by and on his behalf," referring to the candidate. Our statute uses the expression "by or on behalf of any candidate." There is no difference in meaning. The Wisconsin court said [202 Wis. 353]:

"There is no difficulty in understanding what is meant by the term *by;* the phrase 'on his behalf,' when it refers to a candidate, means by someone who acts for him in the sense that an agent acts for and on behalf of his principal. The authority may be express or implied but it must exist; otherwise the disbursement is not made on behalf of the person sought to be charged."

Presumably all expenditures made by a political committee, organized to work for the election of a particular candidate, are for the benefit of such candidate. In that sense the expenditures are made on his behalf. We do not think that because the candidate has knowledge of the activities of the committee and approves same, as here shown, but gives no directions and has no knowledge of any particular disbursement, he becomes chargeable with the disbursements made by the committee. It would be otherwise if the candidate had knowledge of and consented to or approved expenditures of the committee for unlawful purposes.

The case of Rees v. Nash, 142 Minn. 260, 171 N. W. 781, has very little application here.

■ The court found two other charges of violations of the statute by the appellant to be true. It found that appellant, while a candidate for said office and during his campaign, solicited the vote and support of one James Reid, a qualified voter in the district, and promised said Reid that if he would get out and line up votes for appellant he would give Reid a position with the county to operate a gas engine; and when Reid said he could not do so appellant promised to pay him $50 on July 1, 1930, and $100 per month thereafter, and that after the first of the year he would give Reid a job as foreman for the county. Reid did not accept the offer and did not support appellant.

The court found that in like manner the appellant, during his campaign, solicited the vote and support of one Adolph Pernu, a qualified voter of the district, and promised that in consideration of the vote and support of said Pernu he would give him a job with the county at once, but that he would have to wait until the first of the year for his money. Pernu did not accept the offer and did not support appellant.

If these findings are sustained by the evidence there was a clear and material violation of § 559. Berg v. Penttila, 173 Minn. 512, 217 N. W. 935.

As to the promise to Pernu, it is urged that the evidence shows only a promise by appellant personally to employ Pernu to work in appellant's campaign for a compensation of five dollars per day, to be paid by appellant personally. But Pernu's testimony is that appellant also said he could not pay him before the first of the year because there was some injunction against the county so he had no money. There was evidence on many other charges of this character, which may have aided the court in determining the meaning and intent of appellant in the language used. The court in its memorandum said that as to these other charges the evidence showed bitterness between the two factions and that witnesses were not disinterested; that it was difficult to determine what the true facts were on such other charges. For that reason apparently the court found the evidence insufficient on these other charges. But on the Pernu and Reid charges the court found no hostility or interest of the witnesses who testified thereto, and found the charges true. We are not in the favorable position of the trial court to weigh the testimony of witnesses or pass upon the truth of their testimony. Our conclusion is that the findings of the court on the Reid and Pernu charges are reasonably sustained by the evidence and cannot be here disturbed.

It is argued that there was a conspiracy to contest appellant's election and oust him from office. The court did not so find, and the evidence would not sustain any finding that Reid and Pernu were involved in any conspiracy.

As these findings sustain the court's decision, it follows that the order appealed from must be affirmed.

Order affirmed.

On April 21, 1932, the following opinion was filed:

PER CURIAM.

Upon the application of appellant, Stuart Murray, it is ordered that there be added to the opinion heretofore filed the following:

That the appellant have leave to renew, before the district court, his motion for a new trial within 20 days after the going down of the remittitur herein, upon the usual eight days' notice, such motion to be made upon the original motion papers on file in said court and not upon any new grounds or new showing. This shall not affect respondents' right to costs in this court.

