HERMAN TRONES AND OTHERS v. FLOYD B. OLSON.[1]

March 20, 1936.

No. 30,760.

[1]Reported in 265 N. W. 806.

22

*Mart M. Monaghan,* for appellants.

*F. W. Murphy,* for respondent.

HOLT, JUSTICE.

Appeal from an order denying a new trial and from the judgment dismissing on the merits an election contest.

In the November, 1934, general election Floyd B. Olson was declared elected governor of this state. Thereafter and on December 6, 1934, 29 legal voters filed a petition in the district court of Hennepin county charging that respondent, Floyd B. Olson, had violated the corrupt practices act and asking that he be adjudged to have forfeited his office. Over the objection of respondent the petition was amended after it was filed. It is lengthy and verbose; but, as amended, the violations charged are these: (1) That respondent did not file the affidavit of his ownership or interest in the *Farmer-Labor Leader,* a newspaper which supported his candidacy in the election campaign, contrary to 1 Mason Minn. St. 1927, § 540; (2) that respondent failed to report the value of the space furnished by said newspaper in advocacy of his election as required by § 556 of the Code; and (3) that respondent failed to report the value of the radio service he had availed himself of to further his election as said § 556 also demands.

Where an action is tried to the court, 2 Mason Minn. St. 1927, § 9311, provides that "the decision shall be in writing, the facts found and the conclusions of law shall be separately stated, and judgment shall be entered accordingly." Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140; Palmer v. First Minneapolis Trust Co. 179 Minn. 381, 230 N. W. 257, 258. In the instant case, after both sides had submitted their evidence, the court, on

respondent's motion, dismissed the proceeding on the merits. Appellants moved for a new trial and for certain findings. To the order denying the motion the court appended this memorandum:

"This is the so-called ouster proceeding against Governor Floyd B. Olson.

"As above indicated, the motion was submitted without argument and without any settled case or stenographic record.

"Little can be said in any attempt to clarify the situation except perhaps the court might indicate briefly if not more fully the findings of the court upon which the motion for dismissal of the proceedings at the close of the trial was granted on the merits.

"In substance the court found and now finds that the allegations of the contestants' petition herein in respect of any material violation of the Corrupt Practices Act are not sustained by the evidence and are therefore found not true, and as a conclusion of law that the contestee is entitled to a judgment of dismissal on the merits.

"The court finds that the evidence fails to establish that the contestee had any such 'financial interest' in the publication known as the Farmer-Labor Leader as to require the filing with the county auditor of Hennepin County, or elsewhere, any statement with regard thereto, and that at best any such financial interest was so remote and negligible a character as to be trivial and unimportant. The contestee testified that he had no such financial interest and the court accepts such statement to be true.

"The court further finds the contestee's testimony to be true to the effect that he had nothing whatever to do with the so-called item of 'radio time' other than to accept an invitation to broadcast, and that the item was of no expense to him and imposed no contract or obligation, direct or indirect, upon him to pay therefor.

"In any event the court finds that the contestee acted in entire good faith in regard to both of these alleged offenses and that under all the circumstances disclosed by the testimony it would be unjust that the contestee should be required to forfeit the office of chief executive of this state to which he has been duly elected.

"It follows as above stated, that the contestee is entitled to the judgment of dismissal on the merits, and that entry of such judgment may be had accordingly.

"This memorandum is hereby made a part of the original order of dismissal and is the written decision of the court in these proceedings."

The judgment appealed from was rendered upon the memorandum incorporated in the judgment. The dismissal at the close of the trial was irregular, and the learned trial court so realized when he denied the motion for new trial and made a part of the order the memorandum above quoted, which, disregarding its label, constituted a decision in writing in conformity with 2 Mason Minn. St. 1927, § 9311. The motion for a new trial was made upon the minutes of the court and the stenographic report. After the entry of judgment there was a case settled.

The only interest, financial or otherwise, of respondent in the publication or newspaper known as the *Farmer-Labor Leader*, hereinafter called the *Leader*, was this: Respondent had been for several years past a member of a political party known as the Farmer-Labor Association, paying $1.50 a year as dues. It does not appear that this is other than an unincorporated aggregation of persons. How many members there were in 1934 was not shown. The *Leader* appears to be published by the Farmer-Labor Association. It is not published for profit, but evidently in the interest of the Farmer-Labor political party. Respondent testified positively that he had no financial interest in the *Leader;* had no part in directing its policies or in determining what should or should not be published therein; that he had not paid for nor incurred any obligation for the payment of anything in its columns during his campaign. There was no evidence to the contrary. It is idle to contend that the payment of membership dues of $1.50 a year in an association publishing a newspaper for propaganda and not for profit conferred on respondent such a financial interest in the paper that he, as a candidate for election, was required to file an affidavit of ownership or financial interest under § 540.

As to the second charge, that respondent violated § 556 in failing to include in his filed statements of election expenditures the value of the publications or advertisements in the *Leader* in his behalf during the election campaign of 1934, the only evidence introduced was copies of the issues of the *Leader* published before the election. Here again there was an utter lack of proof of any published matter which it was the duty of respondent to report in his verified reports of election statements either under § 556 or any other provision of the corrupt practices act. Respondent testified that he had not requested the publication of any matter in the *Leader;* that he had nothing to do with its management or with its policies or program; that he had undoubtedly read some of its articles advocating his election, but had requested the insertion of none and that he had paid for nothing therein published and had not been asked to do so. There was no evidence in any respect contradicting that of respondent. There was no effort to prove that respondent had any personal connection with any committee or group of the Farmer-Labor Association which ran or controlled the *Leader* or was responsible for what was published therein to promote the election of respondent as governor. Section 556 cannot be so construed as to require every candidate for a public office, at the risk of forfeiting the office if elected, to ascertain and itemize, in his verified expense accounts filed, the value of the space devoted to his election in every newspaper and publication circulated within the territory wherein reside the electors whose duty calls on them to vote for or against him at such election. Such construction would be absurd. Appellants claim that inasmuch as the *Leader* printed political campaign matter otherwise than as paid advertisements in advocating the election of respondent, being published by his servants and agents as such, with his knowledge and consent, he must be held to have accepted this service of great value and is required to report its receipt and the value thereof. There was no evidence offered tending to show that respondent or any agent or servant of his inserted or requested the publication in the *Leader* of any matter outside of paid advertisement in behalf of respondent. As stated, copies of the issues of the *Leader* during the time in question

were received in evidence, but we are not inclined to go through its pages and determine which are not paid advertisements but are in advocacy of his election. No items or spaces in its columns are referred to in appellants' brief as having been printed at his suggestion or request or at the suggestion or request of any committee or agency of respondent, and no witness was called to identify any such article. It is surmised that counsel refers to every member of the Farmer-Labor Association as an agent of respondent on the strength of Martin v. Northern Pacific Beneficial Assn. 68 Minn. 521, 71 N. W. 701, cited by counsel. There a demurrer to a complaint in an action for the wrongful death of plaintiff's intestate, a member of defendant, an unincorporated association, caused by defendant's negligence, was sustained. This decision does not help appellants. The charge in the instant case is not that the Farmer-Labor Association violated § 556 or any other law, but that respondent as an individual and candidate for election violated that section. If he did, it was a penal offense, for which he alone is responsible. Because respondent is a dues-paying member of the Farmer-Labor Association he does not thereby become responsible for every other dues-paying member of that unincorporated association on the theory that they are his servants or agents and he theirs in any tort or in any criminal offense. It is to be noted that respondent was not charged with any offense against any other candidate for governor, nor with securing votes by fraud or bribes or promises of position or money. It was only for violation of the provisions of §§ 540 and 556. There was no charge in the petition that respondent had violated any provision in §§ 580 to 600, inclusive. In Mariette v. Murray, 185 Minn. 620, 242 N. W. 331, the evidence was held insufficient to establish that the political committee there involved was in fact the personal campaign committee of the contestee appellant therein. Language used in that decision may well be applied in this case, where there is a total absence of any evidence that any particular space in the columns of the *Leader* was published at the request of respondent, either directly or indirectly. Hence he cannot be charged with violation of § 556 in that he did not include the value of matter published without his request or authority, and,

so far as this record goes, without his knowledge prior to the publication.

In regard to the violation of said § 556 in omitting from the verified expense statements filed thereunder the value of time respondent received to broadcast over the WCCO radio station, the facts are these: The OLSON FOR GOVERNOR VOLUNTEER COMMITTEE had procured time for radio broadcast of the WCCO station and notified the respondent that a certain amount thereof had been allotted to him. He did make use thereof. The man in charge of the WCCO station testified that the time made use of by respondent during his campaign for governor in 1934 was worth slightly over $1,000. He testified that "the party" had bought the time, without designating what party. But it may be inferred from respondent's testimony that it was the OLSON FOR GOVERNOR VOLUNTEER COMMITTEE that incurred the expense. There was no attempt by appellants to prove who constituted that committee or whether the committee was an organization functioning properly under the corrupt practices act. Nor was it shown that it violated any provision of that act. Nor was any attempt made to prove that it was either the personal or political committee of respondent. On the other hand, respondent testified that he had made no request of the radio station to broadcast and had not agreed to pay therefor; and, as to the OLSON FOR GOVERNOR VOLUNTEER COMMITTEE, that he had nothing whatever to do with it, that it simply notified him that the radio time was available for his use in the political campaign; that he had made no contribution to the committee nor done anything toward collecting money for it; nor had he authorized any persons to collect contributions for it; nor had he anything to do with disbursing any money of that committee either directly or indirectly.

When the corrupt practices act was first enacted the use of broadcasting over the radio was unknown. In the amendments to the law since radio broadcasting came into vogue, there is nothing as to reporting in the verified expense accounts of a candidate for office the value of the radio time he has had the free use of. Apparently it has been regarded as no different from a candidate speaking in his own behalf in a church, public school, or public hall

at the invitation of those in control of the building. But, however that may be, under the undisputed evidence of respondent and the manager of the radio station, there is no foundation whatever for a claim that respondent violated § 556 in omitting from his verified expense statements the value of the broadcasting over the WCCO radio station of which he availed himself.

In view of the conclusion reached upon the three grounds of contest, it is not necessary to consider the rulings in respect to the amendment of the petition by adding the charge of violating § 556 in respect of omitting the value of the broadcasting long after the expiration of the time for instituting the contest, and likewise the claim that the contest should have been dismissed on the ground that so many of the appellants had signed the petition to contest respondent's election under a misapprehension of its purpose.

The matter was rightly disposed of, and the order and judgment are affirmed.

