

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

June 14, 1974

The Honorable Ed J. Harris, Chairman
Elections Committee
House of Representatives
P. O. Box 2910
Austin, Texas 78767

Dear Representative Harris:

Opinion No. H- 327

Re: Whether newspaper's
publication of column by
officeholder who is also
a candidate, is a campaign
contribution under Article
14. 01(c), Texas Election
Code.

On behalf of the Elections Committee, you have requested our opinion concerning provisions of the Campaign Reporting and Disclosure Act of 1973 (Acts 1973, 63rd Leg., ch. 423, p. 1101).

Your first question is:

Is newspaper column space provided without charge
by a Texas newspaper corporation to an incumbent
officeholder while that officeholder is a candidate for
public office a 'contribution' within the meaning of
Art. 14. 01(c), Vernon's Texas Election Code?

The practice with which you are concerned is a common one. This writer prepares and offers a column for publication, as did my predecessor in the office. In view of this, I also have an interest in the question, but do not think it influences our view of the law.

In order to focus upon the central issue, we will make certain assumptions consistent with the actual practice. We assume that the public official prepares and distributes the information as a part of his official duties, that he receives no payment from newspapers for writing it, that it is made available to any newspaper or other media that might publish it, and that the material is prepared and published for the purpose of bringing newsworthy information to the attention of the public. We further assume that the newspaper retains complete authority in regard to whether or not to publish the information or any part of it. For example, we assume the newspaper may

reject the material, publish it as a column, or utilize the information in an article and attribute it to the official.

The question is whether a newspaper's publication of such written information provided by an elected public official, in a column or some other form, while he is a candidate, is a "contribution" within the meaning of Article 14.01(c) of the Texas Election Code, which provides:

> 'Contribution' is defined as any advance, deposit, or transfer of funds, contract or obligation, whether enforceable or unenforceable, to transfer any funds, goods, services, or anything of value to any candidate or political committee involved in an election.

If a newspaper's publication of an incumbent candidate's written material, such as is here under consideration, were to be considered a "contribution" as defined above, and the newspaper is published by a corporation, it could be a criminal offense for such material to be so printed, since corporations are prohibited from making campaign contributions under Art. 14.07 of the Election Code, which reads in pertinent part:

> (a) . . . [N]o corporation shall give, lend or pay money or other thing of value . . . directly or indirectly, to any candidate, political committee, . . . or any other person, for the purpose of aiding or defeating the nomination or election of any candidate . . . .

Knowing receipt of such a corporate "contribution" might also subject the candidate to felony criminal liability under Article 14.07(e) of the Election Code. Failure to record and report the "contribution" would violate the provisions of Art. 14.08(a) and (c), and subject the candidate to the criminal and civil penalties of that Article.

Under such a construction, any publication by a newspaper corporation of any written material provided by either the incumbent or challenger, except as a paid political advertisement, might be considered a prohibited campaign contribution. Moreover, all newspapers could be left to a guessing game, with little statutory guidance, as to which of their freely published materials concerning candidates, politics and governmental affairs are within the meaning of "contributions" under the Election Code.

Such a result was not, in our opinion, intended by the Legislature.  In our opinion, such a construction of "contribution" would lead to absurd results, constitute a chilling effect upon the exercise of the freedom of the press, and would be an unconstitutional abridgement of that fundamental freedom.

The First Amendment of the United States Constitution declares that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . . "

The United States Supreme Court has held that the due process clause of the Fourteenth Amendment protects freedom of speech and press against abridgement by state action, including state statutes.  Near v. Minnesota, 283 U.S. 697 (1931), and a notable recent case, Time, Inc. v. Hill, 385 U.S. 374 (1967).

Freedom of the press is also protected by the Texas Constitution's Bill of Rights:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press . . . . Texas Constitution, Art. I, Sec. 8.

The fact that a newspaper is published by a corporation rather than a natural person does not remove it from the protection of the First Amendment.  The Supreme Court has recognized on numerous occasions that corporations enjoy the freedom of speech and press.  See, e.g., Time, Inc. v. Hill, supra; New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Kingsley Int'l. Pictures Corp. v. Regents, 360 U.S. 684 (1959); Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952).

The publication of information concerning governmental affairs is given the greatest protection by these constitutional provisions.  In a case in which the editor of a daily newspaper was convicted of violating a state statute prohibiting publication of editorials on election day, the United States Supreme Court held the statute unconstitutional and said:

The Honorable Ed J. Harris, page 4    (H-327)


Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of the Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes . . . . Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change, which is all that this editorial did, muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free . . . . It is difficult to conceive of a more obvious and flagrant abridgement of the constitutionally guaranteed freedom of the press.

Mills v. Alabama, 384 U.S. 214, 218-19 (1966).

The Texas Campaign Reporting and Disclosure Act of 1973 is similar to the Federal Election Campaign Act of 1971. Both seek to have campaign contributions identified and reported. Both prohibit contributions by corporations and labor unions. Compare Arts. 14.04 and 14.07, Election Code, V.T.C.S. with 18 U.S.C.A.§610 (Supp. 1974).

The Federal Election Campaign Act of 1971 contains a provision to enforce spending limitations in the communications media upon candidates for Federal office. Before publishing political advertising in support of or in derogation of a candidate, the newspaper or other media must obtain a certificate from the favored candidate that such expenditure would not exceed his spending limitation. Or, if no candidate will take credit for the advertisement, the media must obtain disclosures of political connection from the sponsor. Federal Election Campaign Act of 1971,§104, 47 U.S.C.A.§803.

This provision was held unconstitutional by a three-judge district court in a recent case, in which the New York Times refused a political advertisement submitted by the American Civil Liberties Union, expressing opposition to the Nixon Administration's position on busing. The ACLU refused to comply with certification requirements. The Times refused publication rather than risk criminal penalties. ACLU v. Jennings, 366 F.Supp. 1041 (D.D.C. 1973)(3 judge court) .

The court held that the regulatory scheme which threatened the newspaper with criminal penalties established impermissible prior restraints, discouraged free and open discussion of matters of public concern and constituted an unconstitutional means of effecting legislative goals. The Court said:

> Exposure to criminal penalties . . . places a severe and unnecessary burden upon the communications media to determine whether or not the proposed advertisement should be designated as being made on behalf of a candidate . . . .

> This problem . . . is magnified by the failure of Congress to define clearly the crucial phrase 'on behalf of a candidate' so as to exclude from its coverage expressions of opinion unintended and incapable of regulation . . . . Having not only been placed in the unenviable position of enforcers of this statute, which is aimed at regulating politicians and not the media, but also faced with criminal sanctions for any questionable performance of this duty, the press is entitled to, and the Constitution demands, proper guidance free from ambiguity and vagueness . . . .

> The legislation provides scarce definitional or clarifying assistance under which the seller of advertising space can confidently proceed. ACLU v. Jennings, 366 F. Supp. at 1052

The question at hand involves some of the same elements of definitional imprecision and the threat of criminal liability.

In an election contest in which a successful gubernatorial candidate was charged among other things with a violation of the Minnesota corrupt practices law in that he failed to report the value of free space furnished by a newspaper in advocacy of his election, the Minnesota Supreme Court held:

> Section 556 cannot be so construed as to require every candidate for a public office, at the risk of forfeiting the office if elected, to ascertain and itemize, in his verified

> expense accounts filed, the value of space devoted
> to his election in every newspaper and publication
> circulated within the territory wherein reside the
> electors whose duty calls on them to vote for or
> against him at such election.  Such construction
> would be absurd . . . . Trones v. Olson, 265
> N. W. 806, 808 (Minn. 1936)

In view of the obvious constitutional problems involved in any statutory provision which might impede a newspaper's exercise of its right to publish matter relating to public affairs, and in view of the relevant legal principles and analogies discussed above, we construe the definition of "contribution" in Article 14.01(c) of the Texas Election Code not to include the free publication of such material provided by an officeholder - candidate by a newspaper, whether or not it is a corporation.

Inasmuch as your other questions were predicated upon an affirmative answer to your first question, it is not necessary to respond to them specifically.

## SUMMARY

A newspaper's free publication of a column
provided by an officeholder - candidate is not a
campaign "contribution" under Article 14.01(c),
Texas Election Code, V. T. C. S.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee